| | | |
|---|---|---|
| CHRISTOPHER NEVE, | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No: _____ |
| | ) | |
| **v.** | ) | |
| | ) | |
| CLARENCE F. BIRKHEAD, in his | ) | |
| individual and in his official capacity as | ) | |
| Durham County Sheriff, WENDELL M. | ) | |
| DAVIS, Durham County Manager in his | ) | |
| individual and in his official capacity, and | ) | |
| JOHN or JANE DOES 1-20, | ) | |
| | ) | |
| **Defendant.** | ) | |

## VERIFIED COMPLAINT

Plaintiff Christopher Neve ("Plaintiff"), by his attorney, as for his Complaint alleges

on personal information as to themselves and on information and belief as to all other things

the following claims against Clarence F. Birkhead, Wendell M. Davis, and John or Jane

Does ("Defendants"):

### INTRODUCTION

1. Drugs and biologics, which include vaccines, are licensed by the Food and

Drug Administration ("**FDA**"). Until these products are licensed, they are, by definition,

experimental. To be licensed, manufacturers submit extensive data to the FDA from the

drug's clinical trial to show it is safe and effective.

2.      Nevertheless, Congress recognized the need for the FDA to authorize the use of certain experimental products in an emergency situation – even before they are shown to be safe and effective.  Until they are approved,  Congress made the policy decision that members of the public should not be forced to receive an unapproved product, *i.e.*, experimental product.  It required that every recipient of the pre-approval experimental product must be informed of the known risks and benefits and then be given the choice whether to receive or refuse that product.  *See* 21 U.S.C. 360bbb-3.

3.      Individuals must be provided the "**option to accept or refuse** administration of" any product released under an EUA.   (emphasis added).

4.      Reflecting this federal law, the FDA's guidance document regarding EUAs explains that "the statute [21 U.S.C. 360bbb-3] requires that the FDA ensure that recipients [of emergency use products] are informed … [t]hat they have the option to accept or refuse the EUA product."  This rule also reflects a cornerstone of medical ethics that, for all unlicensed medical products, obtaining the uncoerced voluntary consent of the individual is essential.

5.      The FDA recently granted EUAs for three vaccines against COVID-19 sold by Moderna, Pfizer, and Janssen (the "**COVID-19 Vaccines**").   Even though the manufacturers did submit some safety and efficacy data to obtain the EUA, the FDA's Briefing Document granting the EUA for the COVID-19 Vaccines lists the following as still **unknown**:

- "[e]ffectiveness in certain populations at high-risk of severe COVID-19,"

- "[e]ffectiveness in individuals previously infected with SARS-CoV-2,"

- "effectiveness against asymptomatic infection,"

- "effectiveness against long-term effect of COVID-19 disease,"

- "effectiveness against mortality,"

- "effectiveness against transmission of SARS-CoV-2,"

- "[a]dverse reactions that are very uncommon,"

- adverse reactions "that require longer follow-up to be detected," and

- whether the vaccines will cause "[v]accine-enhanced disease."

6. Given these unknowns, and in compliance with federal law, the EUAs issued by the FDA for the current COVID-19 Vaccines advise health care workers who will be administering the vaccine that "[t]he recipient or their caregiver has the **option to accept or refuse** [the] COVID-19 Vaccine[.]" (emphasis added.) The EUA further advises the public directly that "[i]t is your **choice to receive or not receive** the [] COVID-19 Vaccine." (emphasis added.)

7. The CDC, likewise, recently stated that "under an emergency use authorization," referring to the EUA issued for the COVID-19 Vaccines, the "vaccines are not allowed to be mandatory[.]" (emphasis added.) The CDC then gave the specific example of an organization like a hospital, which after full licensure could "ask[] their workers to get the [COVID-19] vaccine[,]" but where there is only an EUA, "patients and individuals will have the right to refuse the vaccine."

3

8.     Plaintiff was an employee of the Durham County Sheriff's Office which is administered by Defendants.  Defendants recently announced– in direct contravention of the EUAs for the COVID-19 Vaccines, the FDC and CDC guidance, Congress' intent, and federal law – that it is mandating that all of its employees, including Plaintiff, receive the COVID-19 vaccine (the "**Mandate**").  If an employee refuses, Defendants have made clear that the employee will not retain his or her current job and responsibilities as receipt of the vaccine is a condition of ongoing employment.

9.     Plaintiff has chosen to not receive the COVID-19 vaccine.

10.     When Sheriff Birkhead asked Plaintiff for proof of vaccination, Plaintiff would not agree to take the vaccine nor otherwise disclose his personal medical choice regarding the vaccine.  Plaintiff was immediately put on administrative leave without pay.

11.     Two weeks later, Plaintiff was terminated by Defendants for choosing not to take the COVID-19 vaccine.

12.     The Mandate has irreparably harmed Plaintiff and will continue to cause harm. Plaintiff was given the Hobson's choice of either being forced to take an experimental, unapproved vaccine against his will, or being fired, stigmatized, and having his life upended.  He stood by his informed medical decision to not take an experimental product and, as a result, was illegally fired.

**PARTIES AND PERSONAL JURISDICTION**

13.     Plaintiff Christopher Neve was an employee of Durham County Sheriff's Office, administered by Defendants, and worked in the role of Deputy Sheriff.  Plaintiff

4

held this position for more than five years. Plaintiff was Cadet of the Month at Durham County Sheriff's Office Academy and received an Academic Achievement Award and a Driving Award from same. Plaintiff is bilingual and is certified by the United States Department of Justice as a G.R.E.A.T. (Gang Resistance Education and Training) instructor. He has served as a certified School Resource Officer in a middle school for four years and, most recently, served on Patrol for a year. He is a Crisis Intervention Team Officer and a schedule coordinator for off-duty employment. Plaintiff has never received any complaints or disciplinary action during his training or his time at the Sheriff's Office. Plaintiff resides in the city of Durham, within Durham County.

14. Defendant Clarence F. Birkhead is, and at all times relevant herein was, a governmental official within the state of North Carolina, serving as Durham County Sheriff.

15. Defendant Wendell M. Davis is, and at all times relevant herein was, the County Manager of Durham County.

## SUBJECT MATTER JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over the present case pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201 (declaratory relief), 28 U.S.C. § 1343(a) (injunctive relief), and 42 U.S.C. § 1988 (attorneys' fees and costs). This case asserts an actual controversy arising out of Defendant's Mandate which deprives Plaintiff of a right secured by a federal statute.

Case 1:21-cv-00308-LCB-JLW   Document 1   Filed 04/16/21   Page 5 of 30

17.     This Court has jurisdiction over the claims asserting violations of the law of the State of North Carolina through its supplemental jurisdiction under 28 U.S.C. § 1367(a), as those claims are so closely related to the Plaintiff's federal question and Section 1983 claims that they form part of the same case or controversy under Article III of the United States Constitution.

18.     The venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within the District.

## STATEMENT OF MATERIAL FACTS

### I.     Emergency Use Authorization

19.     In December 2020, the FDA granted emergency use authorization for two COVID-19 vaccines. One is sold by Moderna and the other by Pfizer. Both are based on an RNA technology never before used in a licensed vaccine. In February 2021, the FDA granted emergency use authorization for a third COVID-19 vaccine manufactured by Janssen. This vaccine employs a viral vector platform never before used in a licensed vaccine. The clinical trials that the FDA will rely upon to decide whether to license any of these novel vaccines are underway, but they are far from complete.

20.     Before any vaccine is tested, the manufacturer is required to submit for FDA approval a clinical trial protocol, which among other things sets forth the manufacturer's estimate for how long it will take to collect adequate data to establish the vaccine is both safe and effective. The FDA-approved study protocols for the trials for the COVID-19 Vaccines call for collecting safety and efficacy data from trial participants for

6

approximately two years. (Specifically, the Moderna Clinical Trial Protocol calls for 759 days of data collection, the Pfizer Clinical Trial Protocol calls for 742 days of data collection, and the Janssen Clinical Trial Protocol calls for 24 months of data collection.)

21. Pfizer's and Moderna's COVID-19 vaccine were granted EUAs by the FDA on December 11, 2020 and December 18, 2020, respectively. When these companies submitted the applications for the EUAs, they had only accumulated data from study participants for a median of 6 to 8 weeks, *i.e.*, less than 10% of the way into the full study period. When Janssen's COVID-19 vaccine was granted EUA by the FDA on February 27, 2021, it had accumulated data from study participants for a media of 8 weeks, *i.e.*, also less than 10% of the way into its full study period.

22. Given these abbreviated timelines, the EUA applications were based on data which supports that these products may reduce certain symptoms of COVID-19 for some individuals, but the FDA's EUA authorizations made clear that there is no evidence the COVID-19 Vaccines can prevent recipients from becoming infected with and transmitting the virus. As the FDA explains, at the time of the EUA approval, the data was "not available to make a determination about how long the vaccine will provide protection, **nor is there evidence that the vaccine prevents transmission of SARS-CoV-2 [*i.e.*, the virus that causes COVID-19] from person to person**." (emphasis added.) Or as explained by Dr. John R. Mascola, Director of the National Institute of Allergy and Infectious Diseases' Vaccine Research Center which co-developed the Moderna vaccine: "we should appreciate

7

that it's possible to still get exposed to the virus really from anybody whether they're vaccinated or not."[1]

23.     In fact, the FDA Briefing Documents for the COVID-19 Vaccines supporting the grant of an EUA list the following as still **unknown**:

- "[e]ffectiveness in certain populations at high-risk of severe COVID-19,"

- "[e]ffectiveness in individuals previously infected with SARS-CoV-2,"

- "effectiveness against asymptomatic infection,"

- "effectiveness against long-term effect of COVID-19 disease,"

- "effectiveness against mortality," and

- "effectiveness against transmission of SARS-CoV-2."

24.     The Briefing Documents also make clear much is **unknown** about the safety of these products, including,

- "[a]dverse reactions that are very uncommon,"

- adverse reactions "that require longer follow-up to be detected," and

- whether the vaccines will cause "[v]accine-enhanced disease."

25.     The seriousness of these unknowns and potential risks came to light on April 13, 2021 when the FDA put administration of the Janssen vaccine on pause due to serious adverse events, at least one of which led to a fatality.[2]

---

[1] https://www.wsj.com/articles/can-you-still-spread-covid-19-after-you-get-vaccinated-11610379107.

[2] *See* https://www.fda.gov/news-events/press-announcements/joint-cdc-and-fda-statement-johnson-johnson-covid-19-vaccine.

26.     As a result, the authorization letters for each of the COVID-19 Vaccines expressly provide that the vaccines are each "an investigational vaccine **not licensed** for any indication" and require that "**[a]ll promotional material relating to the COVID-19 Vaccine clearly and conspicuously … state that this product has not been approved or licensed by the FDA**, but has been authorized for emergency use by FDA." The authorization letters also expressly approved fact sheets for health care providers and fact sheets for patients regarding the COVID-19 Vaccines, both which provide that the receipt of either vaccine must be optional.

## II.     Defendant's COVID-19 Vaccine Mandate

27.     Defendant Durham County Sheriff's Office is a comprehensive law enforcement agency and is tasked with maintaining the detention facilities of Durham County.

28.     On or about January 21, 2021, Sheriff Birkhead issued a memorandum (the "**Memorandum**") requiring all Durham County Sheriff's Office employees to receive a COVID-19 vaccine as a condition of ongoing employment.

29.     The Memorandum explained in relevant part that:

> Getting vaccinated now will help protect you and the public we serve…
> I am requiring all employees to be vaccinated.  It is mandatory…

30.     By making the affirmative statement that the vaccine "will help protect you and the public we serve[,]" Sheriff Birkhead misled his employees because there is no support for such an assertion.  As noted above, the FDA explicitly stated when grating

9

EUAs for the COVID-19 Vaccines there is no evidence that these vaccines prevent transmission, *see supra* at II.A. Likewise, Dr. Anthony Fauci, director of National Institute of Allergy and Infectious Diseases, has publicly stated: "We do not know if the vaccines that prevent clinical disease also prevent infection… even though you get vaccinated, we should not eliminate, at all, public health measures like wearing masks because we don't know yet what the effect [of the vaccine] is on transmissibility… We don't know that vaccinating people prevents infection… we don't know if it prevents infection."

31. The only evidence that currently exists is that these still experimental vaccines may reduce certain symptoms in some individuals. As such, contrary to the Memorandum's suggestion, it is entirely plausible that vaccine recipients may be infected, but not know they are infected because the vaccine reduces symptoms. Such an individual would not know to isolate him or herself and could, in fact, create a greater risk of infecting others. That is why the FDA, CDC, and NC Department of Health and Human Services all advise vaccine recipients to continue to wear masks, social distance, and follow precautionary protocols even after receiving the vaccine.

32. Further, these vaccines are not free from risk. In the clinical trials, which are still underway, there were serious adverse events documented following vaccination found by the trial investigators to not only be "linked" to the vaccines, but in fact related to the vaccines. For Pfizer's vaccine, these include shoulder injury, ventricular arrhythmia, and lymphadenopathy. For Moderna's vaccine, these include intractable nausea and vomiting, facial swelling, rheumatoid arthritis, Dyspnea with exertion, peripheral edema, Autonomic

dysfunction, and B-cell lymphocytic lymphoma. For Janssen, deep vein thrombosis, tinnitus, arthritis/arthralgia, peripheral neuropathy, radiculitis brachial, and GBS were found to be related or likely related by the trial investigators and/or the FDA.

33.     Furthermore, after the FDA issued the EUA, medical professionals have observed numerous serious adverse reactions linked to the COVID-19 vaccines. In fact, in the approximately four months since the EUA was issued, the CDC's Vaccine Adverse Events Reporting System, which captures fewer than 1% of vaccine adverse events,[3] has already received reports of the following serious adverse reactions: 2,190 deaths, 4,960 hospitalizations, and 8,390 emergency room visits following receipt of the COVID-19 Vaccines.

34.     Four days after the announced Mandate, Sheriff Birkhead sent another email on January 25, 2021 to all Durham County Sheriff Office employees, stating in relevant part:

> Today was the last day for DCSO employees to get the COVID vaccine without having to schedule an appointment…That said, I am disappointed with the low compliance rate of employees taking advantage of this opportunity. I must remind you this is Not an Option – taking the vaccine is Mandatory for all DCSO employees…Failure to take the vaccine could result in disciplinary action.

---

[3] *See* Electronic Support for Public Health – Vaccine Adverse Event Reporting System at 6, available at https://digital.ahrq.gov/sites/default/files/docs/publication/r18hs017045-lazarus-final-report-2011.pdf.

Case 1:21-cv-00308-LCB-JLW   Document 1   Filed 04/16/21   Page 11 of 30

35.     The email continues and addresses "some myths" that Sheriff Birkhead heard in the days after the Mandate was announced.  Sheriff Birkhead states that "[t]he vaccine being administered by Public Health is the Pfizer vaccine.  It has been approved by the United States Food and Drug Administration (FDA)."  This is categorically false as no COVID-19 vaccine has been approved or licensed by the FDA.

36.     The email further states: "The Sheriff does have the authority to make taking the vaccine mandatory as a condition of employment, and does not violate any of your constitutional rights."  This too is incorrect because 21 U.S.C. 360bbb-3 prohibits the Sheriff, or any other employer, from mandating a vaccine approved under an EUA.

37.     On or about January 29, 2021, Plaintiff received an email from the Sheriff's Department inquiring as to his "plans" regarding the COVID-19 vaccine.  Plaintiff responded that he did not wish to share his personal medical information.

38.     On February 5, 2021, Plaintiff received a memo from Sheriff Birkhead seeking a note from Plaintiff's doctor excusing him from the vaccine for medical reasons or, in the alternative, documentation that he had received the vaccine before March 5, 2021.

39.     On Wednesday, March 10, 2021, Plaintiff received an email addressed to him listing nine other co-workers and notifying them of individually scheduled meetings with Sheriff Birkhead to discuss the COVID-19 vaccination.

40.     Plaintiff met with Sheriff Birkhead and his legal advisor, Keisha Lovelace, on March 12, 2021.  In the meeting, Plaintiff was reminded that vaccination was a requirement for his employment and was asked whether he received the COVID-19

vaccine.  Plaintiff would not confirm that he would take the vaccine.  Sheriff Birkhead then had Plaintiff's equipment (e.g., bulletproof vest, badge, duty belt, radio, handcuffs, gun, and patrol car) taken from him on the spot and placed him on administrative leave without pay for insubordination.  Plaintiff has been out of work since this meeting and has not been paid, nor has he been permitted to use his saved vacation or paid time off.

41.    Plaintiff called the Durham County Manager, Defendant Davis, to make him aware of his situation.  Jodi Miller, General Manager of Community and Public Safety, responded to Plaintiff on behalf of Defendant Davis "regarding [his] leave without pay status for insubordination related to the Sheriff's COVID-19 vaccination mandate."  Ms. Miller stated that "North Carolina General Statue § 153A-103 provides that the Sheriff has the exclusive right to hire, discharge, and supervise employees in their office."

42.    Plaintiff was subsequently scheduled for a meeting with Sheriff Birkhead on March 26, 2021.  During that meeting, Plaintiff was terminated.

43.    Plaintiff has not consented to and does not consent to receive the COVID-19 vaccine.  Among other reasons, the vaccines are still undergoing clinical trials and are not yet approved or licensed for use.

III.    **Federal Law Prohibits Mandating Products Granted EUA**

44.    The Mandate issued and enforced by Defendants is in direct violation of federal law.

45.    The same section that authorizes the FDA to grant an EUA, Section 564 of the Federal Food, Drug, and Cosmetic Act (the "**Act**"), codified at 21 U.S.C. 360bbb-3,

13

requires that the public have "the option to accept or refuse administration of the product." 21 U.S.C. 360bbb-3(e). It even provides that the Secretary of HHS is to "ensure that individuals to whom the product is administered are informed" of "the option to accept or refuse administration of the product." *Id.*

46.    The FDA and CDC's guidance and regulations reflect the statutory prohibition from mandating that an individual receive a product that has only been granted EUA. For example, the FDA guidance entitled *Emergency Use Authorization of Medical Products and Related Authorities* provides that:

> …section 564 does provide EUA conditions to ensure that recipients are informed about the MCM [medical countermeasure] they receive under an EUA. For an unapproved product [such as the COVID-19 vaccines], the statute requires that **FDA ensure that recipients are informed** to the extent practicable given the applicable circumstances … **That they have the option to accept or refuse the EUA product**…

(emphasis added).

47.    Similarly, when responding to an inquiry regarding whether the COVID-19 Vaccines can be required, the Executive Secretary of the CDC's Advisory Committee on Immunization Practices ("**ACIP**"), Dr. Amada Cohen, publicly stated that "under an **EUA, vaccines are not allowed to be mandatory**. Therefore, early in the vaccination phase, **individuals will have to be consented and cannot be mandated to be vaccinated**." Dr. Cohen then reaffirmed to the FDA's Vaccine and Related Biological Products Advisory Committee that no organization, public or private, can mandate the COVID-19 Vaccines:

> Organizations, such as hospitals, with licensed products do have

14

capability of asking their workers to get the vaccine. But in the setting of an EUA, patients and individuals will have the right to refuse the vaccine.

48.     As evidence of the importance Congress placed on an individual's right to refuse an EUA product, it carved out only one exception when a product granted an EUA *can* be required: when the President of the United States orders members of the armed forces to receive that product.  10 U.S.C. § 1107a.  The President has not made such an order regarding the COVID-19 Vaccines,[4] and even if he did, Plaintiff is not a member of the military and so this sole exception is not applicable to this matter.

49.     Reflecting the relevant federal law prohibiting mandating an EUA product, Pfizer, Moderna, and Janssen's EUA letters provide that each

> COVID-19 Vaccine is authorized for emergency use with the following product specific information required to be made available to the vaccination providers and recipients, respectively (referred to as 'authorized labeling'):
>
> • Fact Sheet for Health Care Providers Administering Vaccine
>
> … [and]
>
> • Fact Sheet for Recipients and Caregivers.

50.     These facts sheets both provide that the receipt of the vaccine must be optional.  The Fact Sheets for Healthcare Providers for each of the COVID-19 Vaccines

---

[4] Pentagon: Troops Won't Be Required to Take Coronavirus Vaccine, U.S. News & World Report (Dec. 9, 2020) *available at* https://www.usnews.com/news/national-news/articles/2020-12-09/pentagon-troops-wont-be-required-to-take-coronavirus-vaccine.

state that: "The recipient or their caregiver has the option to accept or refuse [the] COVID-19 vaccine." Similarly, the Fact Sheets for Recipients and Caregivers for each COVID-19 Vaccine state on the first page: "**It is your choice to receive the [] COVID-19 Vaccine**."

51. The Fact Sheet for Recipients and Caregivers for each of the COVID-19 Vaccines also set forth in sequence the information required to be provided to recipients of the vaccine pursuant to section 564 of the Act. That section requires that every individual receiving an EUA product must be informed that:

- "that the Secretary has authorized the emergency use of the product";

- "the significant known and potential benefits and risks of such use";

- "the extent to which such benefits and risks are unknown";

- "the option to accept or refuse administration of the product";

- "the consequences, if any, of refusing administration of the product"; and

- "the alternatives to the product that are available and of their benefits and risks."

21 U.S.C. 360bbb-3(e)(1)(A)(ii).

52. Both COVID-19 Vaccine Fact Sheets provide the relevant information to satisfy each of these requirements in sequence. The Fact Sheets clearly tell potential recipients: "It is your choice to receive or not receive the [Pfizer/Moderna/Janssen] COVID-19 Vaccine[,]" and that if "you decide to not receive it, it will not change your standard of medical care."

16

53.     By implementing their vaccine Mandate, Defendants are attempting to coerce all of their employees into receiving one of the COVID-19 Vaccines.  They are deliberately taking away each employee's statutorily guaranteed right to decide for him or herself whether to accept or refuse administration of the COVID-19 Vaccines.  Defendants are doing so openly, without any regard for the personal medical decisions of their employees. Worse still, Defendants are attempting to justify their policy to their employees by using false and misleading information. Sheriff Birkhead has used his position of respect and authority as Sheriff to incorrectly assure employees the vaccine is approved by the FDA and that it will protect others around them, neither of which is true.

54.     However, as the CDC's Executive Secretary stated, no organization has the right to mandate that its employees receive one of these vaccines.  Defendants' policy of coercion through the threat of termination and through retaliation is therefore clearly in direct contradiction to the Act.  As such, the Mandate is unlawful and any termination as a result of the Mandate is also unlawful.

## IV.     Plaintiff Has Suffered and Will Suffer Harm

55.     Plaintiff has already suffered from retaliation for not complying with the Mandate.  He was placed on unpaid leave since March 12, 2021 and was not able to use any of his vacation or comp time.  He was then terminated on March 26, 2021 for failure to comply with Defendants' Mandate.

56.     Plaintiff was faced with the Hobson's choice to either: (a) be forced, in violation of federal law and against his will, to be injected with an unlicensed, experimental

17

vaccine; or (b) be terminated from his job during one of the worst recessions of the last hundred years.

57.	A vaccine injection is a prototypical irreparable harm because it cannot be undone, nor can money compensate for the resulting harm.

58.	On the other hand, Defendant has enforced its Mandate that any employee that does not receive the vaccine will be terminated.  The requirement to receive an experimental vaccine is a direct violation of Plaintiff's statutory right under Section 506 of the Act and of Plaintiff's Constitutional rights and hence constitutes harm.

59.	Without a job and source of income, Plaintiff will be unable to support himself or his wife.  He would not be able to pay his family's many monthly bills.  Plaintiff will struggle to be able to afford health insurance for himself during a time of extreme emotional stress.

60.	Plaintiff was a non-probationary, permanent civil service employee with an unmarred record.  He had a reasonable expectation of continued employment.

61.	Given the state statutes and practices regarding certification for Plaintiff's position, and the culture of law enforcement jobs in the region, every potential law enforcement employer will be alerted to the alleged reason for Plaintiff's termination.  It is plain that many, if not all, law enforcement agencies will refuse to hire an employee who was involuntarily terminated from another law enforcement agency. Even if this were not the case, Plaintiff will also suffer a loss of reputation within the law enforcement community and for this additional reason is therefore unlikely to find alternative work in

18

his field. The stigma to Plaintiff's professional reputation created by his unlawful termination will be irreparable.

62. Plaintiff has not been provided with any administrative proceeding or procedural due process following his unpaid leave or his termination, nor has he been told that such a proceeding will be arranged.

63. In addition to the foregoing harms, losing one's job during regular times, let alone during one of the worst peacetime recessions in 100 years, has also been shown to be "clearly traumatic" and "can have spillover effects into one's life at home." The subsequent search for a new job also poses a risk: "research has shown that the job search process itself can result in decreased psychological well-being."

64. Plaintiff has and will suffer stress and emotional harm as a result of being placed on unpaid leave and then terminated. Plaintiff was humiliated when he was escorted out of the office after he was placed on leave, into a public location and made to turn in his equipment. He was further humiliated when he was driven home to his wife, without his full uniform and equipment, and asked to bring all Sheriff's Office equipment out of his house and hand it over to his colleagues in full view of his neighbors.

65. When the reality of what happened to him hit him, Plaintiff was emotionally distraught. He suffered great stress worrying about how he would support his wife, what his friends and family would think, and what his future would hold. Since his official termination, Plaintiff has been consumed with thoughts about future, alternate employment especially given the current state of the workforce and economy. The permanent loss of

19

his job and the resulting harms have and will cause stress on his marriage and on his wife. Plaintiff has feelings of despair that all his work and efforts to maintain a perfect record and good reputation among his supervisors, colleagues, and residents of the community had been ruined by the illegal mandate. A feeling of hopelessness will persist until he is able to obtain another job, one that would not mandate the same product nor hold his termination from another law enforcement agency against him.

66.     Plaintiff has felt health repercussions from his anxiety and stress; this began when he was notified of the Mandate and continues indefinitely. Plaintiff is feeling depressed and anxious about his tarnished name and the mark on his otherwise impeccable character.

67.     Plaintiff is also concerned about a community advisory board that he currently sits on. He was selected for this board based on his position as a Sheriff's Deputy and he worries now whether he will be asked to step down.

68.     Plaintiff's damages related to loss of income may not be recovered if precluded by constitutional and/or statutory immunity. They are therefore irreparable yet will continue to accumulate.

69.     The harms already incurred and those to be incurred by Plaintiff constitute irreparable injury and are of exceptional circumstance.

70.     Defendants, on the other hand, will not be harmed if its Mandate is enjoined and if Plaintiff is reinstated. Defendants are free to strongly encourage, recommend, and assist their employees to receive the COVID-19 Vaccine. However, these products have

not been approved nor have they been shown to prevent the vaccine recipient from becoming infected with and transmitting the virus that causes COVID-19, and for this reason, everyone working for Defendants, whether they have had the vaccine or not, must continue with all of the same precautions for avoiding contracting and spreading the virus.

## V. A Mandate for an Experimental Product Does Not Serve The Public Interest

71. Congress already decided in the Act that the public interest is best served by allowing individuals to make their own medical decisions when it comes to experimental products. Congress could have allowed state actors like Defendants to mandate EUA products, instead it chose to explicitly require that every individual must be allowed to freely choose whether to be injected with an experimental EUA product, like the COVID-19 Vaccines. *See* 21 U.S.C. 360bbb-3. Not only that, but even during this pandemic, the FDA and CDC guidance related to the COVID-19 Vaccines reinforced that policy decision to allow individuals to make their own decisions.

72. In light of these clear policy decisions made at the highest levels of the government, the public interest in this case will be best served by not permitting Defendant to blatantly violate the federal law intended to protect the individual's right to choose. Whether the COVID-19 Vaccines are actually safe and effective is not yet known and will not be known until, at the earliest, the Phase III clinical trials are completed, and the data produced by these trials show these products to be safe and effective. Regardless, Congress delegated the authority to make these determinations to the FDA. Employers should not be making these decisions in the absence of FDA approval.

21

## COUNT I
## DECLARATORY RELIEF

73.     Plaintiff restates and realleges paragraphs 1-71 of this Complaint and incorporate them herein by reference.

74.     A state requirement is preempted by a federal requirement if it conflicts with the federal requirement and makes compliance with both impossible.  Defendants' mandate conflicts with Congress' intent regarding consent and EUA's and the plain language of the Act.

75.     By mandating all employees to be injected with an unlicensed and unapproved experimental COVID-19 Vaccine, Defendants are impermissibly ignoring the required condition under federal law that individuals be informed of and have the right to exercise their choice to accept or refuse a product authorized for emergency use as provided in the Food, Drug, and Cosmetic Act, § 564 codified at 21 U.S.C. §360bbb-3 which provides the exclusive and comprehensive statutory scheme for the use of products granted emergency use authorization.  Compliance with the Act is not possible if Defendants' Mandate stands, and the Mandate obstructs and frustrates Congress' objectives and policies reflected in the Act.

76.     As shown above, an actual controversy exists between Plaintiff and Defendants with respect to whether the Defendants' Mandate deprives Plaintiff of a right secured by federal law to not be required to receive an unlicensed and unapproved product.

Case 1:21-cv-00308-LCB-JLW   Document 1   Filed 04/16/21   Page 22 of 30

77.     Declaratory relief from this Court will terminate the dispute and controversy between Plaintiff and Defendants with respect to the enforceability and legality of the Mandate.

78.     Therefore, Plaintiff asks this Court to issue a judicial declaration declaring that the Mandate is illegal and unenforceable under relevant Federal law and that Plaintiff's termination was illegal.

## COUNT II
## INJUNCTIVE RELIEF

79.     Plaintiff restates and realleges paragraphs 1-77 of this Complaint and incorporate them herein by reference.

80.     Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendants from implementing and enforcing their Mandate because that Mandate is preempted and deprives Plaintiff of his rights secured by federal statute as alleged herein.

81.     Plaintiff is further entitled to a preliminary and permanent injunction requiring Defendants to reinstate Plaintiff because his termination was illegal and made in violation of a federal law.

82.     Therefore, Plaintiff ask this Court to issue a preliminary injunction enjoining Defendants from enforcing the Mandate and reinstating Plaintiff to his position as Deputy Sheriff.

## COUNT III
## SUBSTANTIVE DUE PROCESS – 42 U.S.C. § 1983

83.     Plaintiff restates and realleges paragraphs 1-81 of this Complaint and incorporate them herein by reference.

84.     The COVID-19 Vaccines are unapproved products.

85.     Plaintiff does not consent to receiving the COVID-19 Vaccines.

86.     Defendants' Mandate constitutes the official policy of Durham County and its Sheriff's Office such that these Defendants, along with Sheriff Birkhead and Defendant Davis are "persons" for purposes of 42 U.S.C. § 1983.

87.     Defendants have instituted their Mandate under color of law as state actors.

88.     The United States Constitution guarantees the substantive due process rights to liberty, life, bodily integrity, and informed consent which cannot be infringed upon without a compelling state interest that is implemented in the least restrictive means.

89.     Congress has made clear that experimental medical products cannot be forced upon anyone.[5]  This right has been repeated numerous times in federal law, including the United States Code, Code of Federal Regulations and guidance from federal health agencies.  *See e.g.*, 21 USCS § 360bbb-3(e)(1) (the Act); 21 CFR 50.20[6]; *see also* FDA Emergency Use Authorization for Vaccines Explained[7]; FDA Guidance Document

---

[5] The only exception being the statutorily granted exception for the military when specifically ordered in writing by the President.

[6] Sets forth conditions for obtaining informed consent in clinical research and reiterating that the consent should be free from "coercion or undue influence."

[7] https://www.fda.gov/vaccines-blood-biologics/vaccines/emergency-use-authorization-vaccines-

Case 1:21-cv-00308-LCB-JLW   Document 1   Filed 04/16/21   Page 24 of 30

Concerning COVID-19 Masks and Respirators, *Enforcement Policy for Face Masks and Respirators During the Coronavirus Disease (COVID-19) Public Health Emergency (Revised) Guidance for Industry and Food and Drug Administration Staff (May 2020)*[8] at 11; FDA Guidance Document Concerning Emergency Use Authorization of Medical Products, January 2017, *Emergency Use Authorization of Medical Products and Related Authorities Guidance for Industry and Other Stakeholders*[9] at 24; FDA Notice Concerning the Emergency Use Authorization of the Anthrax Vaccine, January 2005.[10]

90.    The right to informed medical consent is also considered a fundamental, overriding principle of international law and is reflected in the Nuremberg Code.  *See e.g.*, The Nuremberg Code (1947), 313 BMJ 1448 (1996);[11] UNESCO Universal Declaration

---

explained.

[8] https://www.fda.gov/media/136449/download.

[9] https://www.fda.gov/media/97321/download ("For an unapproved product…the statute requires that FDA ensure that recipients are informed to the extent practicable given the applicable circumstances: That FDA has authorized emergency use of the product;  Of the significant known and potential benefits and risks associated with the emergency use of the product, and of the extent to which such benefits and risks are unknown; That they have the option to accept or refuse the EUA product and of any consequences of refusing administration of the product.")

[10] *See* https://www.federalregister.gov/d/05-2028/p-70) (stating that "[w]ith respect to condition (3), above, relating to the option to accept or refuse administration of AVA, the AVIP will be revised to give personnel the option to refuse vaccination. Individuals who refuse anthrax vaccination will not be punished. Refusal may not be grounds for any disciplinary action under the Uniform Code of Military Justice. Refusal may not be grounds for any adverse personnel action. Nor would either military or civilian personnel be considered non-deployable or processed for separation based on refusal of anthrax vaccination. There may be no penalty or loss of entitlement for refusing anthrax vaccination.").

[11] http://www.cirp.org/library/ethics/nuremberg ("The voluntary consent of the human subject is absolutely essential. This means that the person … should have sufficient knowledge and comprehension of the elements of the subject matter involved, as to enable him to make an understanding and enlightened decision.").

on Bioethics and Human Rights, Article 6(1);[12] and International Covenant on Civil and Political Rights, 999 U.N.T.S. 171, art. 7.[13]

91.     It is a deprivation of Plaintiff's substantive due process rights to coerce an individual under threat of termination from employment for refusing to be injected with an unapproved and hence experimental product.

92.     The COVID-19 Vaccines granted EUA have also not demonstrated they can prevent infection and transmission of SARS-CoV-2, the virus that causes COVID-19, which is why health authorities still provide that those receiving the vaccine continue to wear a mask, socially distance, and practice all other virus prevention measures.

93.     Irreparable harms have resulted and will result from the violation of these Constitutional rights which cannot be adequately redressed.

94.     Wherefore, the Mandate which requires COVID-19 vaccination to continue employment should be struck down for violating the fundamental right to liberty under the United States Constitution.

## COUNT IV
## PROCEDURAL DUE PROCESS – 42 U.S.C. § 1983

---

[12] http://portal.unesco.org/en/ev.php-URL_ID=31058&URL_DO=DO_TOPIC&URL_SECTION =201.html (providing that "[a]ny preventive, diagnostic and therapeutic medical intervention is only to be carried out with the prior, free and informed consent of the person concerned, based on adequate information. The consent should, where appropriate, be express and may be withdrawn by the person concerned at any time and for any reason without disadvantage or prejudice.").

[13] https://www.ohchr.org/en/professionalinterest/pages/ccpr.aspx ("No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment. In particular, no one shall be subjected without his free consent to medical or scientific experimentation.").

95.     Plaintiff restates and realleges paragraphs 1-93 of this Complaint and incorporate them herein by reference.

96.     Plaintiff was placed on unpaid administrative leave, charged with insubordination, and subsequently terminated without any notice, hearing, or written statement of the reasons that may constitute just cause for his leave or termination.

97.     Plaintiff was not permitted to present his full position before any impartial decision-maker.

98.     Plaintiff was deprived by Defendants of his de facto property interest in his job, as a permanent employee, without the guarantees of procedural due process under the Fourteenth Amendment.

## COUNT V
## WRONGFUL TERMINATION – N.C. Gen. Stat. § 126-85

99.     Plaintiff restates and realleges paragraphs 1-97 of this Complaint and incorporate them herein by reference.

100.    Sheriff Birkhead, while exercising supervisory authority as a state employee, discharged, threatened, intimidated, and otherwise discriminated against Plaintiff regarding Plaintiff's compensation, terms, conditions, location, or privileges of employment when Sheriff Birkhead placed Plaintiff on administrative leave without pay and subsequently terminated him.

101.    Sheriff Birkhead did so because Plaintiff refused to comply with the Mandate, directed by Defendants, which constitutes a violation of federal law, rule and regulation, as well as the United States Constitution.

102.    Sheriff Birkhead willfully violated N.C. Gen. Stat. § 126-85 as it was brought to his attention that the Mandate was in violation of federal law.

103.    Plaintiff has not been able to return to work and has not received any pay since the date of his administrative leave. When Plaintiff inquired about using his sick or vacation time in order to keep his income during the leave, he was told he was not permitted to. Plaintiff was subsequently terminated on March 26, 2021.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request the Court to enter Judgment against Defendants as follows:

1.    A declaration that Defendants' Mandate is illegal and unenforceable under federal law;

2.    An order enjoining Defendants from implementing and enforcing their Mandate;

3.    A declaration that Defendants' Mandate violates substantive due process and is unconstitutional;

4.    An order reinstating Plaintiff in his position of Sheriff Deputy and providing for the payment of back wages, full reinstatement of fringe benefits, and seniority rights of Plaintiff Neve;

5. An award for Plaintiff's reasonable attorney fees, costs and expenses, including pursuant to 42 U.S.C. § 1988 and N.C. Gen. Stat. § 126-85(b); and

6. Such other and further relief as this Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff demands a trial by jury.

Dated:  April 14, 2021

/s/ Aaron Siri
Aaron Siri (notice of special appearance pending)
/s/ Elizabeth A. Brehm
Elizabeth A. Brehm (notice of special appearance pending)
**SIRI & GLIMSTAD LLP**
200 Park Avenue, 17th Floor
New York, NY 10166
aaron@sirillp.com
ebrehm@sirillp.com
Phone: 212-532-1091
Fax: 646-417-5967


/s/ Jeffery Dobson
North Carolina State Bar No.: 54808
**DOBSON LAW FIRM, PLLC**
119 SW Maynard Road, Suite 220
Cary, NC 27511
jdobson@dobsonlawnc.com
Phone: 919-591-2240
Fax: 919-591-2247

Attorneys for the Plaintiff

## VERIFICATION

CHRISTOPHER NEVE, declares:

I, Christopher Neve, a citizen of the United States and of North Carolina, have read the foregoing Complaint and know the contents thereof as to myself, that the same is true to my own knowledge, and as to all other matters on information and belief and I believe them to be true.

I declare under penalty of perjury under the laws of the State of North Carolina that the foregoing is true and correct.

Executed this 14th day of April 2021 in Durham, North Carolina.