UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Civil Action No. 1:21-cv-00308

| | | |
|---|---|---|
| CHRISTOPHER NEVE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **DEFENDANTS'** |
| | ) | **MEMORANDUM OF LAW** |
| CLARENCE F. BIRKHEAD, in his | ) | **IN SUPPORT OF MOTION** |
| individual and in his official capacity as | ) | **TO DISMISS** |
| Durham County Sheriff, WENDELL M. | ) | |
| DAVIS, Durham County Manager in his | ) | |
| individual and in his official capacity, and | ) | |
| JOHN or JANE DOES 1-20, | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## I.   NATURE OF THE MATTER BEFORE THE COURT

According to the Centers for Disease Control and Prevention (CDC), COVID-19 has infected 32 million Americans and killed over half a million since it began spreading in the U.S. in February 2020.  *See* CDC COVID Data Tracker at

https://covid.cdc.gov/covid-data-tracker/#datatracker-home.[1]   In January 2021, at

---

[1] The Court may consider judicially-noticeable facts under the Rule 12(b)(6) motion to dismiss standard. *See Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). More specifically, the Court may judicially notice the CDC's statements, facts, and statistics from its website about COVID-19 and ongoing countermeasures.  *See, e.g., Middleton v. Andino*, 488 F. Supp. 3d 261, 267–69 & n.3 (D.S.C. 2020), *appeal dismissed as moot*, No. 20-2022, 2020 WL 8922913 (4th Cir. Dec. 17, 2020); *Legacy Church, Inc. v. Kunkel*, 472 F. Supp. 3d 926, 1066–67 (D.N.M. 2020); *Aviles v. Blasio*, No. 20 CIV. 9829 (PGG), 2021 WL 796033, at *2 (S.D.N.Y. Mar. 2, 2021).

1

the height of the COVID-19 pandemic, the Durham County Sheriff required his deputies to get vaccinated against the highly contagious and deadly virus as a condition of their continued employment, citing their essential role in keeping the community safe. One of them, Plaintiff Christopher Neve, chose not to get vaccinated, and the Sheriff terminated his employment.

Plaintiff has sued Durham County Sheriff Clarence F. Birkhead, Durham County Manager Wendell Davis,[2] and twenty John/Jane Does seeking declaratory and injunctive relief, damages, and attorney's fees. Plaintiff bases his claims on Defendants' alleged violation of a provision of the Federal Food, Drug and Cosmetic Act ("FDCA" or "the Act"), Section 564 (codified at 21 U.S.C. § 360bbb-3), pertaining to vaccine Emergency Use Authorizations during serious public health emergencies like COVID-19.

Defendants have moved to dismiss Plaintiff's case under Rules 12(b)(1), (2), and (6). Fed.R.Civ.Proc. Rule 12. There are multiple, overlapping grounds. First, Durham County was not Plaintiff's employer. Therefore, the County Manager is not a proper defendant in this case in any capacity.

In addition, Plaintiff lacks standing to seek declaratory and injunctive relief challenging the Sheriff's vaccination requirement because it does not and will not

---

[2] Wendell Davis is no longer employed as Durham County Manager. As discussed below, he was not a proper defendant in any capacity while so employed.

apply to him as a non-employee. Further, and most notably, there is no private right of action under the FDCA—a fact which precludes nearly all of Plaintiff's claims. Moreover, even assuming *arguendo* that the FDCA provided a private right of action, Plaintiff's termination was lawful and the Sheriff's vaccination requirement and Plaintiff's termination without a hearing did not violate his substantive or procedural due process rights as an at-will employee. In addition to the arguments outlined above, qualified immunity requires dismissal of Plaintiff's individual capacity § 1983 claims, while Plaintiff's wrongful discharge claim is barred by governmental and public official immunity.

## II.   STATEMENT OF RELEVANT FACTS

The Durham County Sheriff's Office (DCSO) is a comprehensive law enforcement agency which also maintains Durham County's detention facilities. (ECF 1, ¶ 27). Defendant Clarence F. Birkhead is the elected Sheriff of Durham County and heads DCSO. (*Id.*, ¶ 14). Plaintiff was a deputy sheriff serving Sheriff Birkhead. (*Id.*, ¶ 13). As a deputy sheriff, Neve served as a patrol officer, a School Resource Officer, and a Crisis Intervention Team Officer. (*Id.*)

On February 4, 2020, the Secretary of the U.S. Department of Health and Human Services (HHS) determined that COVID-19 presented a public health emergency with a significant potential to affect national security or the health and security of United States citizens living abroad. U.S. Department of Health and

3

Human Services, "Declaration that Circumstances Exist Justifying Authorizations Pursuant to Section 564(b) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360bbb-3," 85 FR 18250 (April 1, 2020). On March 27, 2020, the Secretary of HHS declared that circumstances exist justifying the authorization of emergency use of drugs and biological products during the COVID-19 pandemic, pursuant to Section 564 of the FCDA, subject to terms of any authorization issued under that section. U.S. Department of Health and Human Services, "Declaration that Circumstances Exist Justifying Authorizations Pursuant to Section 564(b) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360bbb-3,"85 FR 18250 (April 1, 2020).

The Secretary's declaration allowed the U.S. Food and Drug Administration (FDA) to issue Emergency Use Authorizations (EUA) for COVID-19 vaccines under Section 564 of the Act. In December 2020, the FDA granted EUAs for the Pfizer[3] and Moderna COVID-19 vaccines. (ECF 1, ¶ 19). In February 2021, FDA granted an EUA for the Johnson & Johnson vaccine (also known as the "Janssen" vaccine). (*Id.*) The FDA explained when issuing the EUA for the Pfizer vaccine, the first of the three EUAs, "the available safety and effectiveness data support the

[3] On May 7, 2021, Pfizer announced that it was applying for full FDA approval for its COVID-19 vaccine. Business Wire, "Pfizer and BioNTech Initiate Rolling Submission of Biologics License Application for U.S. FDA Approval of Their COVID-19 Vaccine" (May 7, 2021), at https://investors.pfizer.com/investor-news/press-release-details/2021/Pfizer-and-BioNTech-Initiate-Rolling-Submission-of-Biologics-License-Application-for-U.S.-FDA-Approval-of-Their-COVID-19-Vaccine/default.aspx.

4

authorization of the Pfizer-BioNTech COVID-19 Vaccine because the vaccine's known and potential benefits clearly outweigh its known and potential risks." FDA News Release, "FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for First COVID-19 Vaccine" (December 11, 2020), at https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19 (ECF 1-5).

The CDC reports that in the months that followed, over half of the U.S. population age 18 and older have received at least one COVID-19 vaccine dose, with 47.4% of that demographic and over a third of the *entire* U.S. population now fully vaccinated. CDC COVID Data Tracker at https://covid.cdc.gov/covid-data-tracker/#vaccinations. In terms of actual numbers, CDC shows that 274 million COVID-19 vaccines have been administered in the U.S., with over 157 million Americans receiving at least one dose and 123 million now fully vaccinated. *Id.* The CDC maintains that most vaccine side effects, if any, are relatively minor and short-lived. CDC, "Safety of COVID-19 Vaccines," at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html. In contrast, the CDC tells the public that serious adverse reactions are "extremely **rare**," with serious side effects that would cause long-term health problems "extremely unlikely." (*Id.*)(emphasis in original).

5

The pandemic reached its worst levels in the U.S. in January 2021. *See* CDC COVID Data Tracker at https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases. On January 21, 2021, Sheriff Birkhead issued a memorandum to his deputies and other DCSO personnel announcing that they had to receive the COVID-19 vaccine as a mandatory condition of continued employment. (ECF 1, ¶ 28; ECF 1-18). The memorandum stated that "you are on the front lines and risk being exposed to COVID-19 each day on the job" and that "[g]etting vaccinated now will help protect you and the public we serve." (*Id.*) The memorandum further explained that "[l]aw enforcement and detention personnel like you are among the first to receive the vaccine because of your essential role in keeping this community safe." (*Id.*)

DCSO personnel could meet the Sheriff's vaccination requirement by receiving the Pfizer vaccine at the Durham County Department of Public Health. (*Id.*; ECF 1-23). Alternatively, they could show compliance by submitting proof of vaccination from another provider. (*Id.*) Personnel with religious or medical reasons preventing vaccination could request an exemption or accommodation. (*See id.*)

On January 25, 2021, the Sheriff emailed his deputies and other employees to urge their compliance with the vaccination requirement. (ECF 1, ¶ 34; ECF 1-23). In his email, the Sheriff emphasized that "[t]he Sheriff does have the authority to make taking the vaccine mandatory as a condition of employment, and does not

violate any of your constitutional rights." (*Id.*)  The Sheriff also cautioned that "[f]ailure to take the vaccine could result in disciplinary action." (*Id.*)

Plaintiff chose not to get vaccinated. (ECF 1, ¶ 9)  When the Sheriff asked Plaintiff for proof of vaccination, Plaintiff indicated that he would not agree to take the vaccine or otherwise disclose his personal medical choice regarding the vaccine. (*Id.*, ¶ 10; *see also* ¶ 37-40)  Plaintiff claims that COVID-19 vaccines are unproven and potentially unsafe.[4]  The Sheriff subsequently placed Plaintiff on administrative leave without pay for insubordination. (*Id.*; *see also* ECF 1-27)

---

[4] Plaintiff suggests, among other things, that:

- there is no evidence that the COVID vaccines prevent COVID infection or transmission (*see* ECF 1, ¶ 22, 30-31, 70, 92);

- thousands of deaths are linked to the COVID vaccines (*see* ECF 1, ¶ 33);

- it is false that vaccinating the Sheriff's deputies would protect those deputies and the public they serve (*see* ECF 1, ¶ 30, 53);

- it is unknown if the COVID vaccines are safe and effective (*see* ECF 1, ¶ 72).

CDC, on the other hand, maintains that:

- There is "strong evidence" that the Pfizer and Moderna vaccines are "highly effective" in preventing infections in real-world conditions.  CDC, "CDC Real-World Study Confirms Protective Benefits of mRNA COVID-19 Vaccines" (March 29, 2021), at https://www.cdc.gov/media/releases/2021/p0329-COVID-19-Vaccines.html;

- There is no evidence that COVID-19 vaccination contributed to any reported deaths.  CDC, "Selected Adverse Events Reported after COVID-19 Vaccination," at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/adverse-events.html;

- "COVID-19 vaccination is an important tool to help stop the pandemic."  CDC, "COVID-19 Vaccines Work," at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html;

Plaintiff alleges he called Durham County Manager Wendell Davis "to make him aware of his situation." (ECF 1, ¶ 41). The County Manager asked Jodi Miller, Durham County General Manager, to respond. (*Id.*). Ms. Miller did so in an email to Plaintiff. (ECF 1-28). In her email, Ms. Miller explained that under N.G.C.S. § 153A-103, "the Sheriff has the exclusive right to hire, discharge, and supervise employees in their office." (*Id.*) Ms. Miller further provided Plaintiff with the human resources contact information for the Sheriff's Office, his actual employer. (*Id.*)

On March 26, 2021, the Sheriff terminated Plaintiff's employment for insubordination. (ECF 1-29). In his letter terminating Plaintiff's employment, the Sheriff expressly cited his authority under N.G.C.S. § 153A-103. (*Id.*) As a result of his termination, Plaintiff ceased being employed by the Sheriff in any capacity. (*See* ECF 1, ¶ 42, 55, 59-67, 100, 103).

Plaintiff filed suit on April 16, 2021. (ECF 1). His Verified Complaint contends that Section 564 of the Act prevents the Sheriff from requiring his deputies be vaccinated against COVID-19 and made his firing illegal. (*See, e.g., id.*, ¶ 44-54, 58, 71-72).

---

- "COVID-19 vaccines are **safe and effective.**" CDC, "Safety of COVID-19 Vaccines", available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html)(emphasis in original).

Plaintiff seeks as follows: a declaration from the Court that the DCSO's vaccination requirement is illegal and unenforceable under the FDCA, violates substantive due process, and is unconstitutional; an order enjoining the DCSO from implementing and enforcing the vaccination requirement; an order reinstating Plaintiff as a deputy sheriff and awarding him backpay and reinstating benefits and seniority rights; and an award of attorney's fees, costs, and expenses. (ECF 1, p. 28-29). Plaintiff also seeks a preliminary injunction. (ECF 2).

Defendants have moved to dismiss Plaintiff's case under Rules 12(b)(1), (2), and (6). For the reasons that follow, Defendants' motion should be granted.

## III.    ARGUMENT

### A. STANDARD OF REVIEW

Defendants have moved to dismiss under Rules 12(b)(1), (2), and (6). A standing challenge is properly presented through a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *See Payne v. Chapel Hill North Properties, LLC*, 947 F. Supp. 2d 567, 572 (M.D.N.C. 2013); *Abbott v. Pastides*, 900 F.3d 160, 175 n.8 (4th Cir. 2018). When the defendant does not present evidence outside the pleadings, the Court proceeds akin to under Rule 12(b)(6). *See Payne*, 947 F. Supp. 2d at 572.

A governmental immunity defense is presented through Rule 12(b)(1) or Rule 12(b)(2) for lack of subject matter or personal jurisdiction. *See Frye v. Brunswick*

9

*Cty. Bd. of Educ.*, 612 F. Supp. 2d 694, 700–01 (E.D.N.C. 2009)(noting continued lack of clarity).  If evaluated under Rule 12(b)(2) and without defendants presenting evidence outside the pleadings, the plaintiff must show a prima facie case of personal jurisdiction, with all reasonable inferences and factual disputes in the plaintiff's favor.  *See Yarbrough v. E. Wake First Charter Sch.*, 108 F. Supp. 3d 331, 336 (E.D.N.C. 2015).

The Rule 12(b)(6) standard requires the Court to determine if the plaintiff has alleged "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007))(internal quotes removed).  In reviewing, the Court does not accept the plaintiff's legal conclusions or any "unwarranted inferences, unreasonable conclusions, or arguments" as true.  *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## B. PLAINTIFF'S CLAIMS AGAINST THE DURHAM COUNTY MANAGER SHOULD BE DISMISSED BECAUSE DURHAM COUNTY DID NOT EMPLOY PLAINTIFF

The North Carolina state constitution establishes the elected office of sheriff. *Young v. Bailey*, 368 N.C. 665, 669, 781 S.E.2d 277, 280 (2016); N.C. Const. art. VII, § 2; N.C.G.S. § 162-1.  As a matter of law, Plaintiff was an employee of the Sheriff, not Durham County.  *See White v. Vance Cty., N. Carolina*, No. 5:19-CV-467-BO, 2020 WL 943893, at *2–3 (E.D.N.C. Feb. 26, 2020); *Hines v. Johnson*, No.

10

1:19CV515, 2020 WL 1516397, at *4 (M.D.N.C. Mar. 30, 2020); *Knight v. Vernon*, 214 F.3d 544, 552–53 (4th Cir. 2000); *Kelley v. Durham Cty.*, No. 1:12CV376, 2013 WL 527242, at *3–4 (M.D.N.C. Feb. 11, 2013); *Young*, 368 N.C. at 669–70.

Indeed, a sheriff has "singular authority over his or her deputies and employees[.]" *Young*, 368 N.C. at 669. In particular, N.C.G.S. § 153A-103(1) provides that the sheriff "has the exclusive right to hire, discharge, and supervise the employees in his office." *Id.* Sheriffs' deputies are not county employees but are directly employed by the sheriff's office. *Id.* at 669–70. By Plaintiff's own admission, the County Manager correctly conveyed this to Plaintiff and informed him that he should address his employment concerns to the Sheriff. (ECF 1, ¶ 41; ECF 1-28).

The existence of an employment relationship is critical to both Plaintiff's § 1983 claims and his wrongful discharge claim. The Sheriff, not Durham County or its manager, had final policymaking authority for purposes of a § 1983 claim. *See Knight*, 214 F.3d at 552–53; *Kelley*, at *3–4; *White,* at *2–3; *Hines*, at * 4. With respect to Plaintiff's claim for wrongful discharge, an employment relationship (with ultimate authority to terminate) is required to establish such a claim. *See Townsend v. Shook,* 323 F. App'x 245, 251 (4th Cir. 2009); *White*, at * 3.

Accordingly, Plaintiff has not alleged any facts giving rise to any plausible claim against Durham County or its former manager, Wendell Davis, in any

11

capacity. All claims against Wendell Davis, in his official and individual capacities, must be dismissed.[5]

## C. PLAINTIFF LACKS STANDING TO CHALLENGE THE SHERIFF'S VACCINATION REQUIREMENT

Article III standing is a threshold requirement for a federal court to entertain a plaintiff's claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S. Ct. 1003, 1012, 140 L. Ed. 2d 210 (1998). Standing requires the plaintiff establish: 1) "injury in fact," 2) "a causal connection between the injury and the conduct complained of," and 3) "likel[ihood]" that "the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992).

A plaintiff seeking declaratory or injunctive relief cannot simply rely on past alleged injury or illegal conduct to establish standing. *See O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S. Ct. 669, 676, 38 L. Ed. 2d 674 (1974); *Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019); *Gardner v. Montgomery Cty. Tchrs. Fed. Credit Union*, 864 F. Supp. 2d 410, 421 (D. Md. 2012); *Bryant v. Cheney,* 924 F.2d 525, 528–29 (4th Cir. 1991); *Raub v. Campbell*, 785 F.3d 876, 885–86 (4th Cir. 2015). Instead, such a plaintiff must show he faces ongoing injury

---

[5] Plaintiff also sued twenty "Doe" defendants. They appear perfunctorily in the caption and no allegations pertain to them. Plaintiff has alleged no facts to make it plausible that any of them even exist as real persons. *See Chidi Njoku v. Unknown Special Unit Staff*, 217 F.3d 840 (4th Cir. 2000). The Court should dismiss all Doe defendants.

12

or the threat of future injury from the defendant's conduct and that the threat of injury is both "real" and "immediate" and not "conjectural" or "hypothetical." *See id.; see also, e.g., Carrero v. Farrelly*, 310 F. Supp. 3d 542, 546 (D. Md. 2018); *Artiga Carrero v. Farrelly*, 270 F. Supp. 3d 851, 878–79 (D. Md. 2017); *Meyer v. McMaster*, 394 F. Supp. 3d 550, 559 (D.S.C. 2019); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S. Ct. 1142, 1149, 173 L. Ed. 2d 1 (2009).

Standing also requires that the plaintiff <u>personally</u> sustain the injury for which he seeks redress such that he has a "personal stake in the outcome of the controversy." *See Meyer*, 394 F. Supp. 3d at 559; *see also Carney v. Adams*, 141 S. Ct. 493, 498–99, 208 L. Ed. 2d 305 (2020).

Here, Plaintiff claims that "the Defendants' Mandate [e.g. vaccine requirement for DCSO employees] deprives Plaintiff of a right secured by federal law to not be required to receive an unlicensed and unapproved product" and asks the Court to declare that "the Mandate is illegal and unenforceable" under Section 564 of the FDCA. (*See* ECF 1, ¶ 74-78). Plaintiff also seeks the Court to enjoin "Defendants from implementing and enforcing their Mandate" pursuant to Plaintiff's alleged rights under the FDCA. (*See id.*, ¶ 80).

Plaintiff's substantive due process claim is similar. Plaintiff claims the Sheriff's vaccine requirement threatens his rights to "liberty, life, bodily integrity,

13

and informed consent" and that "the Mandate which requires COVID-19 vaccination to continue employment should be struck down."  (*Id.*, ¶¶88-94).

As discussed below, Plaintiff's claims seeking reinstatement fail.  As such, Plaintiff lacks standing to challenge the Sheriff's vaccination requirement.  The reason is simple: as a private citizen not employed by DCSO, he is not subject to it.  The requirement applies only to Durham County Sheriff's deputies and other DCSO employees, and Plaintiff is not one and will not be one again.  He faces no "threat" of vaccination from Defendants.  Nor is it plausible that any of the ongoing harms Plaintiff alleges he suffers would be redressed by the relief he seeks.  Without standing, Plaintiff's challenge of the Sheriff's vaccine requirement for his current and future employees must be dismissed.

## D. THE FDCA PRECLUDES NEARLY ALL OF PLAINTIFF'S CLAIMS – WHICH WOULD FAIL ANYWAY

There is no private right of action under the FDCA.  *Perdue v. Wyeth Pharms., Inc.*, 209 F. Supp. 3d 847, 851 (E.D.N.C. 2016)(*citing Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 810, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).  Instead, all "proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States."  21 U.S.C. § 337(a); *see also id.*  Plaintiff's declaratory judgment, injunctive relief, and 42 U.S.C. § 1983 substantive due process claims are predicated on Defendants' alleged violation of Section 564 of the FDCA and seek to enforce or determine alleged rights under the Act.  These claims

14

must be dismissed.  *See, e.g., Jones v. Hobbs*, 745 F. Supp. 2d 886, 893–94 (E.D. Ark. 2010), *aff'd sub nom. Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011); *Creech v. Reinke*, No. 1:12-CV-00173-EJL, 2012 WL 1995085, at *23–24 (D. Idaho June 4, 2012); *Mass v. McDonald's Corp.*, No. CIV.A.3:04-CV-0483-M, 2004 WL 2624255, at *3 (N.D. Tex. Nov. 12, 2004); *Halpern v. PeriTec Biosciences, Ltd.*, No. 1:07CV3040, 2008 WL 11378845, at *3 (N.D. Ohio Aug. 13, 2008); *Trauth v. Forest Lab's, Inc.*, No. 2:13-CV-0224-RWS, 2014 WL 231986, at *3 (N.D. Ga. Jan. 22, 2014);  *Foli v. Metro. Water Dist. of S. California*, No. 11CV1765 JLS BLM, 2012 WL 1192763, at *2–3 (S.D. Cal. Apr. 10, 2012).

 In addition, the FDCA preempts[6] and precludes Plaintiff's state law wrongful discharge claim because it is predicated on Defendants' alleged violation of the FDCA.  *See Exela Pharma Scis., LLC v. Sandoz, Inc.*, 486 F. Supp. 3d 1001, 1012 (W.D.N.C. 2020)(*quoting Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 579 (6th Cir. 2013); *Perdue,* 209 F. Supp. 3d at 851 (E.D.N.C. 2016)(*citing Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001)).  Plaintiff's wrongful discharge claim must therefore be dismissed.

Even assuming *arguendo* the Court could address Plaintiff's claims predicated on the FDCA, they would fail.

---

[6] Plaintiff in fact argues that that the FDCA "provides the exclusive and comprehensive statutory scheme for the use of products granted emergency use authorization" and preempts state law with respect to the legality of his firing.  (*See* ECF 1, ¶ 74-78, 80).

### 1.  The FDCA Does Not Prohibit Employers from Mandating Vaccines Subject to Emergency Use Authorization

In support of his claims against Defendants, Plaintiff relies on 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III).  This fails, as none of the requirements relating to EUAs more generally, *see* 21 U.S.C. § 360bbb-3, or to the COVID-19 EUAs more specifically, restrict employers from requiring vaccination as a condition of employment.

21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) states:

> With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall, for a person who carries out any activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following:
>
> . . .
>
> (ii) Appropriate conditions designed to ensure that individuals to whom the product is administered are informed--
>
> . . .
>
> (III) of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

"Secretary" refers to the Secretary of HHS.  21 U.S.C. § 321(a)(1)(d).  "Subsection (e)(1)" refers to the circumstances of the public health emergency justifying the EUA.

This provision obligates the Secretary, and not others, to act: "the Secretary. . . shall." It requires that the Secretary establish conditions on an EUA necessary or appropriate to protect the public health. The Secretary must do so "the extent practicable given the applicable circumstances" of the public health emergency. The Secretary is to establish these conditions on an EUA "for a person who carries out any activity for which the authorization is issued." These include establishing appropriate conditions on an EUA designed to ensure informed consent by the patients receiving the vaccine: namely, that patients are informed that the vaccine has been authorized under a EUA, its risks and benefits, the available alternatives, the option of refusing it, and the consequences of refusing. 21 U.S.C. § 360bbb-3(e)(1)(A)(ii).

The Secretary of HHS, through the FDA, met these requirements in issuing the COVID-19 EUAs. For example, the Pfizer EUA contains "Conditions for Authorization." (ECF 1-2, p. 6-10). They include conditions imposed on the following persons carrying out activities under the EUA: Pfizer, Inc., its manufacturing facilities, and authorized distributors, (*id.*, p. 6-8); "emergency response stakeholders," e.g. public health agencies and others having legal responsibility and authority for responding to the public health emergency, (*id.*, p. 8, p. 4 n.5); and "vaccine providers," e.g. healthcare providers and facilities authorized or licensed by emergency response stakeholders to administer the

17

vaccine. (*Id.*, p. 8-9, p. 4 n.6). The EUA also imposed conditions relating to printed matter, advertising, and promotion. (*Id.*, p. 9-10). The EUAs for the Moderna and Johnson & Johnson vaccines contain similar conditions imposed on the same groups of persons. (*See* ECF 1-3, p. 6-10; ECF 1-4, p. 6-10).

The Secretary met the informed consent requirements in 21 U.S.C. § 360bbb-3(e)(1)(A)(ii) via authorized Fact Sheets distributed by the healthcare providers administering the vaccine to the persons receiving it. In the EUAs, the Secretary required that vaccine manufactures ensured that these Fact Sheets were made available to vaccination providers, recipients, and caregivers, (ECF 1-2, p. 6, ¶ A); that emergency response stakeholders ensured that the vaccination providers administering the vaccine within their jurisdictions received the Fact Sheets, (*id.*, p. 8, ¶ P); and that the vaccine providers provided the Fact Sheets to each individual receiving the vaccine. (*Id.*, p. 9, ¶ S); (*see also* ECF 1-3, p. 6-9, ¶ A, Q, T; ECF 1-4, p. 6-9, ¶ A, P, S). As a result, each person receiving a Pfizer COVID-19 vaccine would receive a "Fact Sheet for Recipients and Caregivers" stating:

**WHAT IF I DECIDE NOT TO GET THE PFIZER-BIONTECH COVID-19 VACCINE?**

It is your choice to receive or not receive the Pfizer-BioNTech COVID-19 Vaccine.

Should you decide not to receive it, it will not change your standard medical care.

(ECF 1-15, p. 5)(boldface in original).  The Fact Sheets for the other vaccines stated similarly.  (ECF 1-16, p. 5; ECF 1-17, p. 5); *see also* U.S. Equal Employment Opportunity Commission (EEOC), Technical Assistance Questions and Answers, "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws," § K.4. (Dec. 16, 2020), at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws ("EEOC Guidance").

Nothing in the FDCA suggests that Congress sought to bar employers from requiring vaccination as a condition of employment during a public health emergency.  Indeed, recent EEOC guidance recognizes that employers can lawfully impose such requirements.  *See* EEOC Guidance, § K.4. to K.7.  Recent CDC guidance similarly recognizes the irrelevance of 21 U.S.C. § 360bbb-3 to employer vaccination requirements.  *See* CDC, "Workplace Vaccination Program -- Vaccine Mandates & Exemptions" (March 25, 2021), at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/essentialworker/workplace-vaccination-program.html.  The North Carolina Department of Labor (NCDOL) is in accord.  *See* N.C. Department of Labor, "FAQs Regarding COVID-19" (April 21, 2021), at https://www.labor.nc.gov/media/934/open.  The NCDOL specifically states that the requirements in 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III):

19

do not prohibit an employer from requiring an employee be vaccinated against COVID-19 as a condition of employment. In addition, [they do] not prevent discipline or even discharge by an employer as a consequence of refusing to be vaccinated against COVID-19.

(*Id.*)

As such, Plaintiff's claims based on the FDCA would fail on their merits if not precluded.

## E. PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM FAILS BECAUSE IT IS IMPLAUSIBLE THAT DEFENDANTS INTENDED TO HARM PLAINTIFF THROUGH VACCINATION

Plaintiff's substantive due process claim under 42 U.S.C. § 1983[7] fails as a matter of law. Plaintiff appears to argue that his substantive due process rights were and are violated by the Sheriff's requirement that his deputies receive an EUA-authorized COVID-19 vaccine, which Plaintiff has refused. The applicable test for a substantive due process claim in a government employment context involving an employer's exposure of the employee to a risk of harm from a dangerous condition in the workplace is whether the public employer intended actual harm to the employee in a way unjustifiable by any government interest. *See Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 321–23 (4th Cir. 2012)(deliberate

---

[7] The international human rights sources Plaintiff cites cannot support a § 1983 claim. *See Rivera v. Byars*, No. 8:12-CV-02219-JMC, 2013 WL 4697177, at *6 (D.S.C. Aug. 30, 2013); *Hussell v. Jackson Cty. Prosecuting Att'y*, No. 2:19-CV-00101, 2020 WL 4210487, at *12 (S.D.W. Va. Feb. 14, 2020), *report and recommendation adopted*, No. 2:19-CV-00101, 2020 WL 4208942 (S.D.W. Va. July 22, 2020). They are also irrelevant to Plaintiff's allegations.

indifference insufficient); *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126–29, 112 S. Ct. 1061, 1069–70, 117 L. Ed. 2d 261 (1992); *Hood v. Suffolk City Sch. Bd.*, 469 F. App'x 154, 159 (4th Cir. 2012)(related bodily integrity claim properly dismissed). Plaintiff's claim fails this test. Fundamentally, it is implausible that the Sheriff intends to harm his deputies or Plaintiff through vaccination, much less that the vaccination is likely to cause harm. Nor is it plausible that the Sheriff's vaccination requirement was unjustifiable by any legitimate governmental interest, such as trying to prevent deputies from getting and/or spreading COVID-19 to the public. "Slowing the spread of COVID-19 is a compelling government interest." *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 237 (D. Md. 2020), *appeal dismissed*, No. 20-1579, 2020 WL 6787532 (4th Cir. July 6, 2020).

Ultimately, the state has broad police powers to require vaccination without violating a person's substantive due process rights. *See, e.g., Jacobson v. Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905); *Workman v. Mingo Cty. Bd. of Educ.*, 419 F. App'x 348, 353–54 (4th Cir. 2011). That said, the Sheriff's vaccination requirement was a condition of employment only, one which extended no further than his voluntary employment relationship with Plaintiff. Plaintiff refused the vaccine and thereby avoided any "harm" from it. Plaintiff suffered no substantive due process violation.

21

## F. PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM FAILS BECAUSE PLAINTIFF HAD NO PROPERTY INTEREST IN HIS EMPLOYMENT

A viable procedural due process claim under § 1983 for termination from employment without a hearing requires that the plaintiff have a property interest in continued employment. *Pittman v. Wilson Cty.*, 839 F.2d 225, 226–27 (4th Cir. 1988). As a North Carolina sheriff's deputy, Plaintiff lacked any such property interest as a matter of law.

The constitutional office of sheriff is "one of public confidence and fidelity to a public trust." *Borders v. Cline*, 212 N.C. 472, 193 S.E. 826, 829 (1937). A sheriff may "appoint a deputy or employ others to assist him in performing his official duties," but in doing so the sheriff retains ultimate responsibility for his office. *See* N.C.G.S. § 162-24. The role of deputy is that of the "alter ego" of the sheriff – a "sheriff and his deputy are, in contemplation of law, one person." *State ex rel. Cain v. Corbett*, 235 N.C. 33, 38, 69 S.E.2d 20, 23 (1952); *see also Gowens v. Alamance Cty.*, 216 N.C. 107, 3 S.E.2d 339, 340 (1939)(a deputy is "appointed to act ordinarily for the sheriff and not in his own name, person or right"). The special confidence and trust reposed in the sheriff thereby extends to his deputy, making the office of "special concern to the public health, safety, welfare and morals" of North Carolina's citizens. *See* N.C.G.S. § 17E-1.

In consequence, a sheriff may fire his deputies for purely political or ideological reasons. *Young*, 368 N.C. at 671-72. "[M]utual confidence and loyalty between a sheriff and a deputy are crucial in accomplishing the sheriff's policies and duties," as "by standing in the elected sheriff's shoes, a deputy sheriff fills a role in which loyalty to the elected sheriff is necessary to ensure that the sheriff's policies are carried out." *See id.*

Here, Plaintiff served at the will of the Sheriff. As such, he did not have a property interest in continued employment. *See, e.g., Knight v. Vernon*, 214 F.3d 544, 553 (4th Cir. 2000); *Harter v. Vernon*, 953 F. Supp. 685, 693–94 (M.D.N.C.), *aff'd*, 101 F.3d 334 (4th Cir. 1996), *and on reconsideration*, 980 F. Supp. 162 (M.D.N.C. 1997); *Davis v. Lewis*, No. 7:16-CV-340-H, 2018 WL 1473426, at *4 (E.D.N.C. Mar. 26, 2018). His procedural due process claim therefore fails. *See id.*

## G. PLAINTIFF'S WRONGFUL DISCHARGE CLAIM SHOULD BE DISMISSED BECAUSE IT FAILS TO SUFFICIENTLY PLEAD A VIOLATION OF NORTH CAROLINA PUBLIC POLICY

As stated above, Plaintiff was an at-will employee. While at-will employment is ordinarily terminable for any reason or no reason, the common law tort of wrongful discharge – a creature of state law – makes it unlawful for an employer to terminate an at-will employee for reasons that violate the public policy of North Carolina. *See Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447

(1989). The employer's reasons for terminating the employee must violate <u>North Carolina's</u> public policy for a plaintiff to state a claim. *See McDonnell v. Guilford Cty. Tradewind Airlines, Inc.*, 194 N.C. App. 674, 677–80, 670 S.E.2d 302, 305–06 (2009).

A violation of <u>federal</u> law or public policy does not suffice. *See Hadley v. Duke Energy Progress, LLC*, 677 F. App'x 859, 862 (4th Cir. 2017); *see also Santifort v. Guy*, No. 4:14-CV-225-F, 2015 WL 5242922, at *9–10 (E.D.N.C. Sept. 8, 2015); *Warren v. Smithfield Packing Co.*, No. 5:14-CV-71-D, 2014 WL 1691513, at *1–2 (E.D.N.C. Apr. 29, 2014); *Considine v. Compass Grp. USA, Inc.*, 145 N.C. App. 314, 321, 551 S.E.2d 179, 184, *aff'd*, 354 N.C. 568, 557 S.E.2d 528 (2001).

Plaintiff nonetheless argues that the Sheriff violated state wrongful discharge law by allegedly violating Section 564 of the FDCA. However, the North Carolina statute Plaintiff relies on in asserting his claim, N.C.G.S. § 126-85, does not apply to Plaintiff. Chapter 126, including N.C.G.S. § 126-85, applies only to designated types of employees. *See* N.C.G.S. § 126-5(a). Sheriffs' deputies are not among them and are thus not covered by N.C.G.S. § 126-85. *See Johnson v. Forsyth Cty.*, 227 N.C. App. 276, 278–80, 743 S.E.2d 227, 228–29 (2013).

First, sheriffs' deputies are not State employees, as a sheriff's office is a local government entity rather than an arm of the State. *See Boyd v. Robeson Cty.*, 169 N.C. App. 460, 466–77, 621 S.E.2d 1, 5–12 (2005); *Harter v. Vernon*, 101 F.3d 334,

342–43 (4th Cir. 1996); N.C.G.S. § 126-5(a)(1). Second, sheriffs' deputies are not among the employees of local entities listed in N.C.G.S. § 126-5(a)(2). Nor are they employees of a county. *See* N.C.G.S. § 126-5(a)(3); *Young*, 368 N.C. at 669–70.

Plaintiff cannot rely on N.C. Gen. Stat. § 126-85 as the North Carolina public policy violated when the Sheriff terminated his employment. Moreover, as stated above, the federal law cited by Plaintiff, 21 U.S.C. § 360bbb-3(e)(1)(A)(ii), does not apply to employers or otherwise prohibit employers from mandating vaccines authorized under EUAs in the employment context. With respect to vaccines in general, the North Carolina Court of Appeals has held that an at-will employee like Plaintiff may be terminated for failing to comply with an employer's vaccination requirement. *See Head v. Adams Farm Living, Inc.*, 242 N.C. App. 546, 556–58, 775 S.E.2d 904, 911–12 (2015).

## H. QUALIFIED IMMUNITY BARS INDIVIDUAL-CAPACITY § 1983 CLAIMS WHILE GOVERNMENTAL AND PUBLIC OFFICIAL IMMUNITY BARS STATE LAW CLAIMS

While Plaintiff's claims fail for the other reasons discussed above, Plaintiff's claims are also barred by various immunities.

First, Defendants are entitled to qualified immunity for Plaintiff's § 1983 procedural and substantive due process claims:

Qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. To overcome this shield, a plaintiff must demonstrate that: (1) the defendant violated

25

the plaintiff's constitutional rights, and (2) the right in question was
clearly established at the time of the alleged violation.

*Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018)(cleaned up and internal cites

omitted); *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015)("[o]fficials are not

liable for bad guesses in gray areas; they are liable for transgressing bright lines").

Plaintiff had no statutory or constitutional right to continued employment after

refusing vaccination against COVID-19 for undisclosed reasons.  If there were such

a right, it was not clearly established.   Indeed, several governmental agencies

including the CDC, the United States Equal Employment Opportunity Commission

(EEOC), the Centers for Disease Control (CDC), and the North Carolina Department

of Labor (NCDOL) have suggested employers may generally mandate COVID-19

vaccinations.[8]  Nor did Plaintiff have any clearly established right to a hearing to

argue against termination.  Plaintiff's individual-capacity § 1983 claims must be

dismissed.

In addition, Sheriff Birkhead and former Durham County Manager Davis are

public officials.  *See Phillips v. Gray*, 163 N.C. App. 52, 56–57, 592 S.E.2d 229,

232 (2004); *Frink v. Batten*, 197 N.C. App. 231, 676 S.E.2d 670 (2009); *Satorre v.*

*New Hanover Cty. Bd. of Comm'rs*, 165 N.C. App. 173, 180, 598 S.E.2d 142, 146–

47 (2004); *Hudson v. Pasquotank Cty.*, 262 N.C. App. 372, 820 S.E.2d 129 (2018).

---

[8] *See citations supra*, p. 19-20.

Governmental immunity precludes Plaintiff's state law wrongful discharge claim against both Defendants in their official capacities. *See Paquette v. Cty. of Durham*, 155 N.C. App. 415, 418–19, 573 S.E.2d 715, 717–18 (2002); *Oleyar v. Cty. of Durham*, 336 F. Supp. 2d 512, 520 (M.D.N.C. 2004).

Additionally, Plaintiff has not plausibly pled that the Sheriff Birkhead or County Manager Davis acted maliciously, corruptly, or outside the scope of their official authority. The Sheriff's purpose in requiring his deputies to receive an FDA-authorized vaccine which over a third of the country has now received was obvious and irrefutably legitimate. Because Plaintiff has not plausibly alleged any circumstances that would overcome public official immunity for either Defendant, Plaintiff's individual-capacity wrongful discharge claims against both must be dismissed on public official immunity grounds. *See Doe v. Wake Cty.*, 264 N.C. App. 692, 695–96, 826 S.E.2d 815, 819, *review denied*, 372 N.C. 355, 828 S.E.2d 158 (2019); *Branch v. Guida*, No. 3:09CV417, 2011 WL 1770074, at *7 (W.D.N.C. May 9, 2011).

## CONCLUSION

As discussed above, Plaintiff's claims fail for many different reasons. This case is unsalvageable and should be dismissed with prejudice.

27

Dated: May 18, 2021

/s/ Danielle Barbour Wilson
Danielle Barbour Wilson
N.C. State Bar No. 39516
/s/ Jesse H. Rigsby  IV
Jesse H. Rigsby IV
N.C. State Bar No. 35538
The Banks Law Firm, P.A.
P.O. Box 14350
Research Triangle Park, NC 27709
dwilson@bankslawfirm.com
jrigsby@bankslawfirm.com
Phone:  (919) 474-9137
Fax:  (919) 474-9537

**ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF WORD COUNT**

Subject to Rule 11 of the Federal Rules of Civil Procedure, I hereby certify that the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** complies with the 6,250 word limitation for a memoranda of law in support of Motion to Dismiss. Specifically, counting headings, footnotes, quotations and citations, and not counting the case caption, signatures, and any certificates of counsel, the word count as indicated by Microsoft Word is 6,227.

This the 18th day of May 2021.

**THE BANKS LAW FIRM P.A.**

By: /s/ Danielle Barbour Wilson
Danielle Barbour Wilson
N.C. State Bar No. 39516
/s/ Jesse H. Rigsby IV
Jesse H. Rigsby IV
N.C. State Bar No. 35538
P.O. Box 14350
Research Triangle Park, NC 27709
Telephone: (919) 474-9137
Facsimile: (919) 474-9537
Email: dwilson@bankslawfirm.com
Email: jrigsby@bankslawfirm.com

**ATTORNEYS FOR DEFENDANTS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this day I have electronically filed the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification to counsel for all parties as follows:

> Aaron Siri
> Elizabeth A. Brehm
> Siri & Glimstad LLP
> 200 Park Avenue, 17th Floor
> New York, New York 10166
> *Attorneys for Plaintiff*
>
> Jeffery Dobson
> Dobson Law Firm, PLLC
> 119 SW Maynard Road, Suite 220
> Raleigh, NC 28202
> *Attorney for Plaintiff*

This the 18th day of May, 2021.

> By: /s/ Danielle Barbour Wilson
> Danielle Barbour Wilson
> N.C. State Bar No. 39516
> /s/ Jesse H. Rigsby IV
> Jesse H. Rigsby IV
> N.C. State Bar No. 35538
> The Banks Law Firm, P.A.
> P.O. Box 14350
> Research Triangle Park, NC 27709
> Telephone: (919) 474-9137
> Facsimile: (919) 474-9537
> Email: dwilson@bankslawfirm.com
> Email: jrigsby@bankslawfirm.com
>
> **ATTORNEYS FOR DEFENDANTS**