UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| CHRISTOPHER NEVE, | ) | |
| | ) | |
| **Plaintiff,** | ) | Case No: 1:21-cv-00308 |
| | ) | |
| **v.** | ) | |
| | ) | |
| CLARENCE F. BIRKHEAD, in his | ) | |
| individual and in his official capacity as | ) | |
| Durham County Sheriff, WENDELL M. | ) | |
| DAVIS, Durham County Manager in his | ) | |
| individual and in his official capacity, and | ) | |
| JOHN or JANE DOES 1-20, | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## I.     INTRODUCTION

Plaintiff was a respected, well-liked, loyal deputy sheriff who was abruptly terminated when he exercised his right to refuse an unapproved medical product. Defendants' motion to dismiss Plaintiff's case universally denies all wrongdoing, ignores the language of the emergency use authorizations for the COVID-19 vaccines, the intent of Congress, the guidance of the FDA, and the fundamental rights to informed consent and bodily autonomy.

Defendants have moved to dismiss Plaintiff's case under Fed. R. Civ. P. 12(b)(1), (2), and (6).  In Defendants' Memorandum in Law in Support of Defendants' Motion to

Dismiss (Dkt. No. 18, hereinafter "**Def. MOL**"), Defendants assert the following arguments: (1) "Durham County was not Plaintiff's employer. Therefore, the County Manager is not a proper defendant in this case in any capacity" (Def. MOL at 2); (2) "Plaintiff lacks standing to seek declaratory and injunctive relief challenging the Sheriff's vaccination requirement because it does not and will not apply to him as a non-employee" (*Id*. at 2-3); (3) "there is no private right of action under the FDCA" and even if there was "Plaintiff's termination was lawful and the Sheriff's vaccination requirement and Plaintiff's termination without a hearing did not violate his substantive or procedural due process rights as an at-will employee" (*Id*. at 3); (4) "qualified immunity requires dismissal of Plaintiff's individual capacity § 1983 claims" (*Id*.); and (5) "Plaintiff's wrongful discharge claim is barred by governmental public official immunity." (*Id*.).

## II.    SUMMARY OF RELEVANT FACTS

Drugs and biologics, which include vaccines, are licensed by the Food and Drug Administration ("**FDA**"). Until these products are licensed, they are, by definition, experimental. To be licensed, manufacturers submit extensive data to the FDA from the drug's clinical trial to support its safety and efficacy. Complaint at ¶ 1.

Nevertheless, Congress recognized the need for the FDA to authorize the use of certain experimental products in an emergency situation – even before they are shown to be safe and effective – under an emergency use authorization ("**EUA**"). However, until they are approved, Congress made the policy decision that members of the public should not be forced to receive an unapproved product, *i.e.*, experimental product. It required that

every recipient of the pre-approval experimental product must be informed of the known risks and benefits and then be given the choice whether to receive or refuse that product. *See* 21 U.S.C. § 360bbb-3 (individuals must be provided the "**option to accept or refuse** administration of" any product released under an EUA) (emphasis added). (*Infra* § IV.A.; Complaint at ¶¶ 2-3.)

The FDA granted EUAs for three vaccines against COVID-19 sold by Moderna, Pfizer, and Janssen (the "**COVID-19 Vaccines**"), however the FDA's Briefing Document granting the EUA for the COVID-19 Vaccines makes clear that there are still many critical unknowns regarding these vaccines, including their effectiveness in reducing mortality, asymptotic infection, transmission of the virus, or ability to cause vaccine enhanced disease. (*Infra* § II.A.; Complaint at ¶ 5.)

Given these unknowns, and in compliance with federal law, the EUAs issued by the FDA for the current COVID-19 Vaccines advise health care workers administering the vaccines that "[t]he recipient … has the option to accept or refuse [the] COVID-19 Vaccine" and advises the public that "[i]t is your choice to receive or not receive the [] COVID-19 Vaccine." The CDC, likewise, recently stated that "under an emergency use authorization," the "vaccines are not allowed to be mandatory[.]" (*Infra* § IV.A.; Complaint at ¶¶ 6-7.)

Plaintiff was an employee of the Durham County Sheriff's Office which is administered by Defendants. Defendants recently announced – in direct contravention of the EUAs for the COVID-19 Vaccines, the FDA and CDC guidance, Congress' intent, and

3

federal law – that it is mandating that all of its employees, including Plaintiff, receive the COVID-19 vaccine (the "**Mandate**").  If an employee refuses, Defendants have made clear that the employee will be terminated.  Plaintiff chose to not receive the COVID-19 vaccine and was terminated by Defendants for that choice.  (*Infra* § IV.A.2.; Complaint at ¶¶ 8-11.)

The Mandate has irreparably harmed Plaintiff and will continue to cause harm.

## III.   LEGAL STANDARD FOR MOTION TO DISMISS

In reviewing a motion to dismiss for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.  A complaint need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.  A Rule 12(b)(6) motion to dismiss does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (internal citations omitted).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *Foli v. Metro. Water Dist. of S. Cal.,* No. 11CV1765 JLS (BLM), 2012 U.S. Dist. LEXIS 50272, *5 (S.D. Cal. April 10, 2012).

## IV.   PLAINTIFF HAS STANDING

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Meyer v. McMaster*, 394 F.

Supp. 3d 550, 558 (D.S.C. 2019). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id*. Generally, when ruling on a motion to dismiss for lack of standing, "courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Carrero v. Farrelly*, 270 F. Supp. 3d 851, 879 (D. Md. 2017).

To have Article III standing, "[t]he plaintiff must **have suffered** or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Carrero v. Farrelly*, 270 F. Supp. 3d 851, 878 (D. Md. 2017) (emphasis added).

An injury in fact is established when a plaintiff shows that "he… suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Meyer v. McMaster*, 394 F. Supp. 3d 550, 558 (D.S.C. 2019). "[T]raceability is established if it is 'likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court." *Id*. To satisfy redressability, "a plaintiff must show that it is likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Id*. (internal citations omitted).

### A. PLAINTIFF SUFFERED AN INJURY IN FACT

Plaintiff was terminated by Defendant for failing to comply with the COVID-19

vaccine Mandate. Plaintiff alleges in his Complaint that his termination was in violation of federal law. Defendants demonstrate they understand Plaintiff's injury in fact by stating: "Plaintiff claims that the 'Defendants Mandate…deprives Plaintiff of a right secured by federal law to not be required to receive an unlicensed and unapproved product…'" Def. MOL at 13. Defendants do not argue that Plaintiff's injury in fact was not concrete or particularized, nor do Defendants argue that the injury in fact is conjectural or hypothetical. Plaintiff is not merely a private citizen with no connection to the DCSO. He was an employee of the DCSO until he was terminated after being subject to the Mandate.

## B.  PLAINTIFF'S INJURY IN FACT WAS CAUSED BY DEFENDANTS

Defendants terminated Plaintiff based on the Mandate, thus, Plaintiff has established that it is likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court. Defendants do not argue that there is a lack of a causal connection between the injury and the conduct complained of.

## C. PLAINTIFF'S CLAIMS ARE LIKELY TO BE REDRESSED BY A FAVORABLE JUDICIAL DECISION

Defendants argue that it is not "plausible that any of the ongoing harms Plaintiff alleges he suffers would be redressed by the relief he seeks."

Plaintiff alleges the following past and ongoing harms in his Complaint (Dkt. No. 1):

1.     He was placed on unpaid leave since March 12, 2021 and was not able to use any of his vacation or comp time. He was then terminated on March 26, 2021. Complaint at ¶ 55.

2.      Given the state statutes and practices regarding certification for Plaintiff's position, and the culture of law enforcement jobs in the region, every potential law enforcement employer will be alerted to the alleged reason for Plaintiff's termination. Complaint at ¶ 61 (which Defendants term as "insubordination") (Def. MOL at 7).

3.      "Plaintiff will suffer a loss of reputation within the law enforcement community and for this additional reason is therefore unlikely to find alternative work in his field." Complaint at ¶ 61. Even if Plaintiff does find employment in his field, "the stigma to Plaintiff's professional reputation created by his unlawful termination will be irreparable." *Id*.

4.      Plaintiff has and will suffer stress and emotional harm as a result of being placed on unpaid leave then terminated. Complaint at ¶¶ 64-66.

5.      Plaintiff continues to suffer a loss of income. Complaint at ¶¶ 59, 68, 103.

Many, if not all, of the past and future harms will be redressed if the Court declares that the Mandate and Plaintiff's subsequent termination was illegal. The injury-in-fact requirement is not limited simply to financial or economic losses. Dignitary harms or 'stigmatic injur[ies],' while not tangible, may be sufficiently concrete to constitute injury in fact. *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019). In *Griffin*, cited by Defendants, the Court acknowledged that a plaintiff can establish injury in fact by alleging dignitary or stigmatic harms (specific mentioning of these two words is not necessary, as such a ritual incantation is unnecessary). Id. at 654. The only reason this

7

was not sufficient in Griffin to establish injury in fact was because the plaintiff, a blind man, could not become a member of the credit union whose website he alleges he could not read. Unlike in Griffin where the dignitary harms were considered hypothetical, Plaintiff's termination is not hypothetical and Plaintiff alleges he was terminated by Defendants illegally and, as a result, has suffered and will continue to suffer numerous "dignitary" or "stigmatic" harms as stated above.

### D. DEFENDANTS' LEGAL CITATIONS ARE UNPERSUASIVE

Defendants cite several cases to support their argument that Plaintiff has no standing. Defendants do not analogize to any of the cases they cite. The cases cited by Defendants are distinguishable and do not support Defendants' arguments that Plaintiff lacks standing.

First, *Steel Co. v. Citizens for a Better Env't, 523 U.S. 83* held the plaintiff (an organization) did not meet one element of standing, finding that "none of the specific items of relief sought, and none that we can envision as 'appropriate' under the general request, would serve to reimburse respondent [plaintiff] for losses caused." *Id*. at 106. Here, Plaintiff seeks relief that would redress his harms and so this is inapposite.

Defendants next cite five cases for the proposition that "[a] plaintiff seeking declaratory or injunctive relief cannot simply rely on past alleged injury or illegal conduct to establish standing." However, none of these cases are analogous to the instant matter. In *O'Shea v. Littleton,* 414 U.S. 488, none of the plaintiffs identified as himself having suffered any injury and the court found that future harms were in the "area of speculation

8

and conjecture" *Id*. at 496-497. This is unlike the present case where Plaintiff has plainly laid out his harms suffered and those that he will continue to suffer. *Griffin*, discussed above, held that plaintiff lacked standing because he was not able to become a member of the Credit Union he sued and therefore damages were hypothetical. *Griffin*, 912 F.3d at 655. Likewise, *Gardner v. Montgomery County Teachers Fed. Credit Union,* 864 F. Supp. 2d 410, 412 (D. Md. June 4, 2012) is irrelevant. That case involved a dispute between a federally chartered credit union and two of its customers over the legality of the credit union's practice of using funds from customers' checking and savings accounts to offset debt that customers have incurred on their credit card accounts.

In *Bryant v. Cheney,* 924 F.2d 525, the plaintiff sought both a declaration that a performance rating (that was later expunged) was in retaliation for off-the-job protected speech and an injunction against further retaliations that the court held "he can show no indication will recur." *Id*. at 527. *Bryant* stated, "…Article III simply precludes [injunctive and declaratory relief] to enjoin the conjectural or declare the fully repaired broken." *Id*. at 529. Here, the alleged harms are not conjectural and are certainly not repaired absent adjudication of the issue.

Finally, the analysis in *Raub v. Campbell,* 785 F.3d 876, 878 involves the legal standards for federal injunctive relief which is now moot as Plaintiff is no longer seeking injunctive relief. *Id*. at 885-886.

Defendants cite additional case law to support their contention that the threat of injury must be "both 'real' and 'immediate' and not 'conjectural' or 'hypothetical.'" Def.

Case 1:21-cv-00308-LCB-JLW   Document 25   Filed 06/22/21   Page 9 of 22

MOL at 13.  However, these cases do not support that Plaintiff lacks standing.  In *Meyer v. McMaster*, 394 F. Supp. 3d 550, the plaintiff sued the Governor of South Carolina alleging that a bill "create[d] a monopoly in favor of franchised dealers and benefits them by blocking Tesla from operating within [South Carolina]."  The court found that Meyer failed to establish an injury in fact and lacked Article III standing on this basis alone because he brings nothing more than a "generalized grievance" about his access to Tesla. *Id.* at 560.  On the contrary, Plaintiff has alleged specific, immediate, and continuing grievances as a result of Defendants' actions.  As to redressability, "Meyer's implicit belief that Tesla would move to South Carolina if the statute is invalidated is 'merely speculative,' as opposed to being 'likely,' because there is no allegation within the Complaint that Tesla would take the step that Meyer desires it to take." *Id.* at 563.  If Defendants' mandate is invalidated in the present case, Plaintiff's harms would be redressed.

In *Summers v. Earth Island Inst.,* 555 U.S. 488, the plaintiff's claims were settled after issuance of the preliminary injunction, which resulted in the injury in fact being remedied.  *Id.* at 494.  The court's holding that "such 'some day' intentions – without any description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require." *Id.* at 496.  Likewise, in *Carney v. Adams*, 141 S. Ct. 493, the court held that Adams did not show the necessary "injury in fact," he suffered a "generalized grievance."  Plaintiff, on the other hand, has alleged actual injury that has already occurred and is ongoing.

10

It is therefore respectfully submitted that Defendants' arguments that Plaintiff does not have Article III standing must fail.

## V.    FEDERAL COURT IS THE ONLY VENUE FOR THIS MATTER

The FDCA preempts state court jurisdiction of the issue in dispute. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986). As such, this case is property filed in the Middle District of North Carolina.

## VI.    21 U.S.C. § 360bbb-3 PREEMPTS STATE AND LOCAL ACTION AND THE COURT CAN AUTHORIZE PLAINTIFF'S CLAIMS

Congress was exceedingly clear when it enacted 21 U.S.C. § 360bbb-3 which states the "conditions of authorization" of an "unapproved product" such as the Covid-19 vaccines. 21 U.S.C. § 360bbb-3(e) in very plain language states:

> **(e) Conditions of authorization.**
> **(1)** Unapproved product.
> > **(A)** Required conditions. With respect to the emergency use of an unapproved product, the Secretary … shall …establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the … [a]ppropriate conditions designed to ensure that individuals to whom the product is administered are informed—
> > > **(I)** that the Secretary has authorized the emergency use of the product;
> > > **(II)** of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and
> > > **(III)** of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

It is therefore plain that a condition to an EUA for an "unapproved product" is that

the individual who might be subjected to this "unapproved product" must be able to accept or refuse administration of the product.

Any law, regulation or policy contrary to this express declaration of rights by the Secretary is contrary to 21 U.S.C. § 360bbb-3 and separately to the EUA issued for the "unapproved product" and is automatically preempted.

Several cases Defendants cite discuss preemption in the context of other sections of the FDCA not at issue in the instant matter, and these cases are distinguishable as they do not involve 21 U.S.C. § 360bbb-3 in any manner nor do any of them involve an EUA. 21 U.S.C. § 360bbb-3 is unlike the other sections of the FDCA as it is intended to create a specific individual right and the same is also true of an EUA issued by the federal government.

To wit, the FDA itself has made clear that this statute and an EUA both preempt state and local law and contradictory requirements in its guidance on this topic which states as follows:

> ***FDA believes that the terms and conditions of an EUA issued under section 564 preempt state or local law***, both legislative requirements and common-law duties, that impose different or additional requirements on the medical product for which the EUA was issued in the context of the emergency declared under section 564.

> To the extent state or local law may impose **requirements** different from or **in addition to those imposed by the EUA** for a particular medical product within the scope of the declared emergency or threat of emergency (e.g., requirements on prescribing, dispensing, administering, or labeling of the medical product), such law **"stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," and "conflicts with the exercise of Federal authority under [§ 564]**."

12

In an emergency, it is critical that the conditions that are part of the EUA or an order or waiver issued pursuant to section 564A—those that FDA has determined to be necessary or appropriate to protect the public health—be strictly followed, and that no additional conditions be imposed."[1]

No state or local entity, including Defendants, are allowed to alter, for its own use or purported benefit, the conditions in the EUA. State and local governments are not allowed to add the additional condition that an EUA product must be accepted or employment will be terminated. Since neither the EUA at issue nor 21 U.S.C. § 360bbb-3 provide for it, state and local entities cannot mandate the EUA "unapproved products" including the COVID-19 vaccines.

Therefore, the Mandate "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," and "conflicts with the exercise of Federal authority under [§ 564]." Unlike all other sections of the FDCA that were at issue in the cases cited by Defendants, the section at issue in this case provides a specific individual right to object to an experimental product. An "unapproved product" is one that cannot be undone after it is administered. There is no method to extract the contents of the "unapproved product" at issue in the instant lawsuit after administration. That is why the option to refuse applies universally since Congress did not specifically state otherwise. No previous court decisions state that the general idea embodied in the FDCA that there is no private right of action applies to 21 U.S.C. § 360bbb-3 and, given that this section differs

---

[1]https://www.fda.gov/regulatory-information/search-fda-guidance-documents/emergency -use-authorization-medical-products-and-related-authorities (emphasis added).

immensely from other sections of the FDCA and confers a specific right to Plaintiff, and that there is a separate EUA issued by the federal government, a private right of action can certainly be found from this unique right that springs from the EUA which, while derivative of the FDCA, also carries separate and independent legal force and rights.

## VII. PLAINTIFF IS NOT ATTEMPTING TO ENFORCE A VIOLATION OF FDCA

Even if the Court does not, based on the circumstances and lack of precedent related to 21 U.S.C. § 360bbb-3, carve out an exception to the general idea that there is no private right of action in relation to the FDCA, Plaintiff's claims falls outside the reach of the general idea that there is no private right of action to enforce or restrain violations of the FDCA. Plaintiff, by way of this lawsuit, is not attempting to enforce or restrain a violation of the FDCA. Plaintiff has not requested that any penalties for violation of the FDCA, as laid out in the FDCA, be assessed. Plaintiff seeks from this court the determination that Plaintiff engaged in a legally protected activity in declining the "unapproved product" issued pursuant to EUA and that, as a result of him being denied this right to decline by the Sheriff, he was wrongfully terminated.

## VIII. PLAINTIFF DOES HAVE A VALID CLAIM FOR WRONGGFUL TERMINATION

Defendants argue that Plaintiff is not protected by N.C.G.S. § 126-85 as "sheriff's deputies are not among the employees of local entities listed in N.C.G.S. § 126-5(a)(3)." Def. MOL at 24.

Nonetheless, Plaintiff has pled facts sufficient to establish a cause of action for

wrongful termination. The general rule is and North Carolina courts "ha[ve] repeatedly held that in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Salter v. E & J Healthcare*, 155 N.C. App. 685, 692 (2003).

However, there are exceptions.

> [T]his Court has recognized a public-policy exception to the employment-at-will rule.
>
> Public policy is defined as "the principle of law that holds no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." There is no specific list of what actions constitute a violation of public policy. However, wrongful discharge claims have been recognized in North Carolina where the employee was discharged (1) for refusing to violate the law at the employer['}s request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy[.]"
>
> Under this public policy exception, the employee has the burden of pleading and proving that the employee's dismissal occurred for a reason that violates public policy.
>
> To establish a *prima facie* case of retaliation, it must be shown that (1) the plaintiff engaged in a protected activity, (2) the employer took adverse action, and (3) there existed a causal connection between the protected activity and the adverse action." *Id*. at 692-693 (internal citations omitted).

Here, Plaintiff was engaging in a legally protected activity, that of refusing an "unapproved product" in use pursuant to an EUA. The refusal of the "unapproved product" was a legally protected activity, written into the statute by Congress and the emergency use authorization by the FDA. Thereafter, the Sheriff terminated Plaintiff, as acknowledged by

15

Defendants: "Plaintiff Christopher Neve, chose not to get vaccinated, and the Sheriff terminated his employment." Def. MOL at 2. Plaintiff engaged in the protected activity and thereafter, for that reason, was terminated. There was no other reason for his termination and, therefore, there exists a causal connection between the protected activity and the adverse action.

## IX. THE COURT HAS DISCRETION TO ISSUE A DECLARTORY JUDGMENT

Since there is no precedent prohibiting the Court from doing so, the Court should exercise discretion and permit Plaintiff's claims to move forward and deny Defendants' Motion to Dismiss. In *Creech v. Reinke*, cited by Defendants, the Court considered whether plaintiff established that declaratory relief would be appropriate under the circumstances. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest. Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *Creech v. Reinke*, No. 1:12-cv-00173-EJL, 2012 U.S. Dist. LEXIS 77915, at *69-70 (D. Idaho June 4, 2012). The *Creech* court noted that the plaintiff could not establish that any judgment in his favor would be more than a mere advisory opinion. Id. at 70. This is distinguishable from the instant matter. Declaratory relief in this matter would serve a useful purpose in clarifying the legal import of the provisions of the EUA at issue and would terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties.

16

## X.  PLAINTIFF'S SUBSTANTIVE AND PROCEDURAL DUE PROCESS CLAIMS DO NOT FAIL

Defendants argue that the applicable test for a substantive due process claim in a government employment context involving an employer's exposure of the employee to a risk of harm from a dangerous condition in a workplace is whether the public employer intended actual harm to the employee in a way unjustifiable by any government interest. Defendants rely on *Slaughter v. Mayor & City Council of Baltimore*, 682 F. 3d 317 to support this argument.  Defendants' reliance on *Slaughter* is misplaced as *Slaughter* is distinguishable.  In *Slaughter*, the employee was a firewoman who died in a "live burn" training exercise that was directly related to her job responsibilities as fire fighter.  *Id*. at 319.  The risk of harm in the instant matter, however, is from an activity not at all related to Plaintiff's job responsibilities, and not inherent in the position whatsoever, and Plaintiff is not required to plead this as an element of his substantive due process claim.

Likewise, Defendants' reliance on *Collins v. City of Harker Heights*, 503 U.S. 115 (1992) is misplaced and ineffective at supporting Defendants' arguments.  In *Collins*, a case in which a 42 U.S.C. § 1983 claim was brought on behalf of a city sanitation employee who had died from asphyxia while trying to repair a sewer line, the court stated, "[t]he question presented is whether []42 U. S. C. § 1983 provides a remedy for a municipal employee who is fatally injured in the course of his employment because the city customarily failed to train or warn its employees about known hazards in the workplace." *Collins, supra*, at 117.  The Court held that the Fourteenth Amendment Due Process Clause "does not impose an independent federal obligation upon municipalities to provide certain

17

minimal levels of safety and security in the workplace." *Id*. at 130. None of these are at issue in the instant lawsuit.

Defendants' reliance on *Hood v. Suffolk City Sch. Bd.*, 469 F. App'x 154, 159 (4th Cir. 2012) is also unpersuasive. In *Hood*, the district court characterized Hood's claims as substantive due process claims "based on her right not to be harmed by the conditions of the School in which she works." *Id*. at 158. The district court held that Hood's substantive due process claim that the defendants violated her liberty interest in bodily integrity was not a cognizable violation of a constitutional right. *Id*. at 158.

Plaintiff's substantive due process claim is distinguishable from the substantive due process claims in the cases cited by Defendants, as Plaintiff has a right to bodily autonomy and informed consent. It is a deprivation of Plaintiff's substantive due process rights to coerce an individual under threat of termination from employment for refusing to be injected with an unapproved and hence experimental product. As such, the court should not grant Defendants' motion to dismiss as to this claim.

Defendants cite to *Jacobson v. Massachusetts* – for the proposition that a state "has broad police powers to require vaccination without violating a person's substantive due process rights," – a case decided in a time when infectious diseases were the leading cause of death. Short of mandating vaccines, there was nothing else to combat an epidemic; there was no FDA, nor any regulation of research and the doctrine of informed consent did not yet exist. At the time, substantive due process rights were not seen to allow contraception or interracial marriage, both crimes in 1905, nor did they allow women the right to vote or

extinguish the Jim Crow laws that were in place. It is a grave understatement to say that this case is distinguishable as well. In this oft-cited case from over one hundred and fifteen years ago, when the only vaccine in use was the smallpox vaccine, there was no employer mandate of a vaccine and individuals were given the option to refuse the vaccine by paying a **five-dollar fee**. That case did not hold that a person can be mandated by an employer to accept an EUA "unapproved product." In addition, Defendants' argument that Plaintiff refused the vaccine and thereby avoided any "harm" from it does not support Defendants' conclusion that there was no substantive due process violation.

## XI.    <u>QUALIFIED IMMUNITY DOES NOT BAR PLAINTIFF'S CLAIMS</u>

The Eleventh Amendment does not bar a suit against a North Carolina sheriff in his official capacity. The North Carolina treasury will be unaffected by any judgment against a sheriff, and the other three *Ram Ditta* factors are either equivocal, or militate toward denial of immunity. *Harter v. Vernon*, 101 F.3d 334, 343 (4th Cir. 1996) (citing *Ram Ditta v. Maryland Nat'l Capital Park and Planning Comm.*, 822 F.2d 456 (4th Cir. 1987)).

As stated in 21 U.S.C. § 360bbb-3(e), Plaintiff had a clear right to reject any "unapproved product" including the EUA Covid-19 vaccines. Sheriff Birkhead's termination of Plaintiff, then, is a violation of clearly established authority and, as such, qualified immunity does not apply to Sheriff Birkhead.

Defendants' argument that Plaintiff had no statutory or constitutional right to continued employment after refusing COVID-19 vaccination completely ignores 21 U.S.C. § 360bbb-3.

## XII.   <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss or, at a minimum, grant Plaintiff leave to amend his Complaint.

DATED this 22nd day of June 2021

/s/ Elizabeth A. Brehm
Aaron Siri *(Special Appearance filed)*
Email: aaron@sirillp.com
Elizabeth A. Brehm *(Special Appearance filed)*
**SIRI & GLIMSTAD LLP**
200 Park Avenue, 17th Floor
New York, NY 10166
aaron@sirillp.com
ebrehm@sirillp.com
Phone: 212-532-1091
Fax: 646-417-5967

 /s/ Jeff Dobson
Jeff Dobson
North Carolina State Bar No.: 54808
**DOBSON LAW FIRM, PLLC**
119 SW Maynard Rd., Suite 220
Cary, NC 27511
jdobson@dobsonlawnc.com
Phone: 919-591-2240
Fax: 919-591-2247

Attorneys for the Plaintiff

# CERTIFICATE OF WORD COUNT

Subject to Rule 11 of the Federal Rules of Civil Procedure, and Local Rule 7.3(d)(1) I hereby certify that the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS complies with the 6,250-word limitation for a response in opposition to a motion to dismiss. Specifically, counting headings, footnotes, quotations and citations, and not counting the case caption, signatures, and any certificates of counsel, the word count as indicated by Microsoft Word is 5,114.

DATED this 22nd day of June 2021.

<div style="margin-left:40%">

/s/ Elizabeth A. Brehm
Aaron Siri *(Special Appearance filed)*
Email: aaron@sirillp.com
Elizabeth A. Brehm *(Special Appearance filed)*
SIRI & GLIMSTAD LLP
200 Park Avenue, 17th Floor
New York, NY 10166
aaron@sirillp.com
ebrehm@sirillp.com
Phone: 212-532-1091
Fax: 646-417-5967

 /s/ Jeff Dobson
Jeff Dobson
North Carolina State Bar No.: 54808
**DOBSON LAW FIRM, PLLC**
119 SW Maynard Rd., Suite 220
Cary, NC 27511
jdobson@dobsonlawnc.com
Phone: 919-591-2240
Fax: 919-591-2247

Attorneys for the Plaintiff

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this day I have electronically filed the foregoing

PLAINTIFF'S RESPONSE IN OPPOSITON TO DEFENDANTS' MOTION TO

DISMISS with the Clerk of Court using the CM/ECF system which will send notification

to counsel for all parties as follows:

Danielle Barbour Wilson
Jesse H. Rigsby IV
The Banks Law Firm, P.A.
P.O. Box 14350
Research Triangle Park, NC 27709
Attorneys for Defendants


DATED this 22nd day of June 2021.

/s/ Elizabeth A. Brehm
Aaron Siri *(Special Appearance filed)*
Email: aaron@sirillp.com
Elizabeth A. Brehm *(Special Appearance filed)*
SIRI & GLIMSTAD LLP
200 Park Avenue, 17th Floor
New York, NY 10166
aaron@sirillp.com
ebrehm@sirillp.com
Phone: 212-532-1091
Fax: 646-417-5967


 /s/ Jeff Dobson
Jeff Dobson
North Carolina State Bar No.: 54808
**DOBSON LAW FIRM, PLLC**
119 SW Maynard Rd., Suite 220
Cary, NC 27511
jdobson@dobsonlawnc.com
Phone: 919-591-2240
Fax: 919-591-2247

Attorneys for the Plaintiff